**Margaret P. SHEPARD, Appellant**

v.

**TEMPLE UNIVERSITY, Appellee.**

Superior Court of Pennsylvania.

Argued Feb. 27, 2008.

Filed May 5, 2008.

Paul J. Drucker, Philadelphia, for appel-
lant.

Neil J. Hamburg and Cameron J. Etezady, Philadelphia, for appellee.

Lawrence White, Philadelphia, for American Counsel, amicus curiae.

BEFORE: KLEIN, GANTMAN and ALLEN, JJ.

OPINION BY ALLEN, J.

¶ 1 Margaret P. Shepard ("Dr. Shepard") appeals from the order of the trial court that granted summary judgment in favor of Temple University ("Temple") in this breach of contract action. We affirm.

¶ 2 The pertinent facts and procedural history may be summarized as follows: In 1998, Dr. Shepard was hired by Temple as an assistant professor in the Temple University College of Health Professions, Department of Nursing. At that same time, she was appointed to serve as Director of Graduate Studies for the Nursing Department. From the time that she was hired, until June, 2004, when she was denied promotion and tenure, Dr. Shepard was consistently reviewed by the appropriate university committees and, according to Dr. Shepard, "continuously and consistently advised that she was 'on tenure track.'" Complaint, 4/20/06, at ¶ 7.

¶ 3 In 2003, Dr. Shepard began the formal application process for promotion and tenure by submitting her application to the Nursing Department's Promotion and Tenure Committee ("the Department Committee"). On October 31, 2003, the Department Committee unanimously recommended promotion and tenure for Dr. Shepard. Dr. Shepard then submitted her application for promotion and tenure to the Department Chairperson, who likewise recommended Dr. Shepard's promotion and tenure.

¶ 4 In further pursuit of her promotion and tenure, Dr. Shepard applied to the College of Health Professions Promotion and Tenure Committee ("the College Committee"). On December 12, 2003, the College Committee, with one abstention, unanimously recommended promotion and tenure for Dr. Shepard. In 2004, Dr. Shepard submitted her application to her Dean. On January 13, 2004, Dr. Shepard's Dean recommended that she be granted promotion and tenure.

¶ 5 Following the Department Committee and the College Committee level reviews, all of the recommendations were forwarded to the Council of Deans for informational purposes only. The recommendations were then submitted to the president of the university for transmittal to the Board of Trustees. The president was assisted in his review by the All University Promotion and Tenure Advisory Committee and a Presidential Fellow, Dr. Ann Van Zant. Despite the unanimous recommendations to the Board of Trustees from the nursing faculty and the administrative personnel of the College of Health Professions of the Department of Nursing to grant promotion and tenure to Dr. Shepard, Temple University President Dr. David Adamany ("President Adamany") recommended denying tenure. The Board followed President Adamany's recommendation and rejected Dr. Shepard's application

¶ 6 Dr. Shepard filed an appeal of this decision to the Personnel Committee of the Faculty Senate ("the Personnel Committee"). In this internal appeal, Dr. Shepard did not raise any procedural irregularity. Rather, she contended that her record of teaching and scholarship merited tenure. The Personnel Committee denied Dr. Shepard's appeal, explaining that "disagreements concerning whether [Dr. Shepard's] research and teaching were outstanding represented legitimate academic disagreements based on a conscientious effort to reach a fair judgment."

¶ 7 On April 20, 2006 Dr. Shepard filed a two-count complaint against Temple. In her first Count, Dr. Shepard asserted that Temple's denial of her application for promotion and tenure constituted a breach of her employment contract with the university. In her second count, Dr. Shepard contended that, at all times, she relied upon the representations made to her when she applied and was hired by Temple in 1998, as well as the statements made in the Temple University Faculty Handbook ("faculty handbook"). According to Dr. Shepard, "in denying [her] promotion and tenure, [Temple] changed and altered the requirements for tenure subsequent to [her] employment ... and subsequent to her reliance upon [Temple's] requirements ... for tenure and subsequent to her compliance with all of the requirements of tenure set forth in [the faculty handbook] and the practices of Temple[.]" Complaint, 4/20/07, at ¶ 25. Thus, Dr. Shepard claimed that Temple's actions "violated [her] justifiable reliance upon the directions and instructions given to her when she applied for employment and was hired by [Temple] in 1998 and in the documents and handbooks given to her at that time and followed by all supervisory employees and other members of the administration during her employment with [Temple]." *Id.* at ¶ 26.

¶ 8 On July 21, 2006, Temple filed its answer to Dr. Shepard's complaint. Within its answer, Temple denied that the faculty handbook constituted Dr. Shepard's employment contract and stated that, at all relevant times, the procedures and standards governing promotion and tenure were covered by a collective bargaining agreement between Temple and the Temple Association of University Professionals ("TAUP"). Temple further denied that Dr. Shepard "met the combined standards for scholarship, teaching and service to justify the award of tenure at Temple."

Answer, 7/21/06, at ¶ 6. Temple also asserted that Dr. Shepard's "tenure track probationary reappointments warned her of reservations about her qualifications for tenure." *Id.* at ¶ 7. Temple denied that it had breached its contract with Dr. Shepard.

¶ 9 Temple also specifically denied that Dr. Shepard could rely on any document with regard to the standards and procedures for promotion and tenure other than the collective bargaining agreement, and that if Dr. Shepard did so, any such reliance was not actionable. More specifically, within its answer, Temple expressly denied that it "changed and altered the requirements for tenure except to the extent of any changes to which TAUP agreed in connection with the administration or renegotiation of the collective bargaining agreement and states, to the contrary, that, at all times, Temple applied to [Dr. Shepard] the standards and procedures for the evaluation of [Dr. Shepard] for promotion and tenure as set forth in the TAUP collective bargaining agreement[.]" Answer, 7/21/06, at ¶ 25.

¶ 10 The parties engaged in discovery. On May 4, 2007, Temple filed a motion for summary judgment in which it asserted that Dr. Shepard's "sole substantive claim ... is that she believes she was qualified for tenure at Temple and disagrees with Temple's decision.... Given that [Dr. Shepard] admits that Temple's President and Board of Trustees had the authority to deny tenure to her, there simply is no cognizable legal issue presented by [Dr. Shepard's] causes of action, nor has she produced any evidence that could support her causes of action." Motion, 5/4/07.

¶ 11 On June 6, 2007 Dr. Shepard filed her response to Temple's motion for summary judgment. Within this response, Dr. Shepard asserted that "there exist many

genuine issues of material fact and [that she] clearly produced sufficient facts to support her cause of action." Response, 6/6/07, at 1. More specifically, Dr. Shepard contended that Temple "breached its contract with her by not complying with their own terms and conditions and by not utilizing standards and procedures that were represented to [her] would be utilized when determining her application for tenure. Furthermore, [Temple] changed the rules and procedures mid-stream[.]" *Id.* According to Dr. Shepard, this modification manifested itself in the 2002 Guidelines for the President's Review of Tenure and Promotion Applications ("the guidelines").

¶ 12 By order dated June 18, 2007, the trial court granted Temple's summary judgment motion. This appeal followed. Dr. Shepard raises the following issues on appeal:

1. Whether [Temple] established there was no genuine issue of material fact as to a necessary element of the cause of action?

2. Whether [Temple] is entitled to judgment as a matter of law?

Dr. Shepard's Brief at 4. Because both of these issues question whether summary judgment was properly granted, we will address them together.

 ¶ 13 As our Supreme Court has summarized:

Our standard of review on an appeal from the grant of a motion for summary judgment is well-settled. A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.

In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P.

1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the nonmoving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a nonmoving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will review the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*Murphy v. Duquesne University,* 565 Pa. 571, 777 A.2d 418, 429 (2001) (citations omitted).

 ¶ 14 In *Murphy,* a law school professor, whose tenure was revoked due to serious misconduct, sued Duquesne University for breach of his tenure contract. Our Supreme Court held that the standard of review that governs such an action is the same as that used when considering any breach of contract between private parties. *Murphy,* 777 A.2d at 428. In order to evaluate Dr. Shepard's contention that summary judgment in Temple's favor "is precluded by the existence of genuinely disputed, material facts" as to whether Temple breached its contract when it denied her tenure, we must first determine the terms of Dr. Shepard's employment contract. *Id.* at 429. As our Supreme Court further summarized in *Murphy:*

The fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties. The intent of the par-

ties to a written agreement is to be regarded as being embodied in the writing itself. The whole instrument must be taken together in arriving at contractual intent. Courts do not assume that a contract's language was chosen carelessly, nor do they assume that the parties were ignorant of the meaning of the language they employed. When a writing is clear and unequivocal, its meaning must be determined by its content alone.

Only where a contract's language is ambiguous may extrinsic or parol evidence be considered to determine the intent of the parties. A contract contains an ambiguity if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. This question, however, is not reviewed in a vacuum. Instead, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts. In the absence of an ambiguity, the plain meaning of an unambiguous written instrument presents a question of law for resolution by the court.

*Murphy,* 777 A.2d at 429–30 (citations omitted).

¶ 15 In this case, the parties do not dispute that Dr. Shepard's application for tenure was governed by the TAUP collective bargaining agreement, the provisions of which were restated in the faculty handbook. Moreover, Dr. Shepard does not dispute that she was afforded all appropriate procedures that were provided in both documents. Rather, the essence of her breach of contract claim is that the guidelines, which were distributed to Temple's faculty approximately one to two years prior to Dr. Shepard's pursuit of tenure, changed the requirements for tenure in contravention of the pertinent terms of the collective bargaining agreement.

The record established in this case refutes this claim. In fact, in her deposition testimony, Dr. Shepard conceded that the guidelines did not alter the tenure procedure and that she utilized the guidelines in preparing her dossier for tenure review. Deposition of Margaret P. Shepard, 1/19/07, at 162–64. Thus, Dr. Shepard's true claim is that these guidelines altered the substantive manner in which her dossier was reviewed. As such, we conclude that she is "essentially attempting to secure through a breach of contract action a *de novo* review of" Temple's decision to deny her tenure. *Baker v. Lafayette College,* 350 Pa.Super. 68, 504 A.2d 247, 256 (1986). This she cannot do.

¶ 16 In *Ferrer v. Trustees of University of Pa.,* 573 Pa. 310, 825 A.2d 591 (2002), Dr. Ferrer contended that the University breached his rights under the Procedures Concerning Misconduct in Research when the dean of the school of veterinary medicine unilaterally imposed sanctions upon him that precluded him from conducting or supervising research on the human leukemia virus for a period of two years. Our Supreme Court summarized its earlier reasoning in *Murphy, supra,* as follows:

We observed that a breach of contract claim may be brought by a tenured professor when it is asserted that the University failed to comply with the procedures established by the parties' contractual agreement. This cause of action is distinguishable from a tenured professor's claim that a university that has followed the established procedures has made the wrong decision. We stated that "while [a professor] is free to assert in a court of law that the process of forfeiture that was afforded him did not comply with the contract terms, he is not fee to demand that a jury reconsider and re-decide the merits of his termination." *[Murphy v. Duquesne*

*University*, 565 Pa. 571, 777 A.2d 418, 433 (2001)]; *see also Baker v. Lafayette College*, 516 Pa. 291, 532 A.2d 399, 403 (1987) ("This Court has no jurisdiction to review the factual determinations of a college's governing body unless it can be clearly demonstrated that the body violated its own procedures.").

*Ferrer*, 825 A.2d at 609.

¶ 17 As noted above, Dr. Shepard did not claim any procedural irregularity in the tenure review process when she made her internal appeal of the denial of tenure. While Dr. Shepard contends in her brief on appeal that "many procedures established by the contract between the parties in this matter were breached by" Temple, it is clear from our review of her actual claims, and in light of the undisputed evidence of record, that her alleged "breach" concerns the manner in which tenure review was conducted by President Adamany. In short, via this appeal, Dr. Shepard improperly seeks to re-litigate President's Adamany's substantive review, *i.e.*, the weight he assigned individual factors identified within the collective bargaining agreement and/or faculty handbook and the "compelling reasons" he provided to support his recommendation that tenure be denied. As this is not a proper judicial function, *Ferrer, supra*, we affirm the trial court's award of summary judgment in favor of Temple. In doing so, we agree with the following statement by the trial court:

> With respect to a decision to not renew an employment contract, the evaluation of the performance of a college professor and his or her suitability to the educational needs, goals, and philosophies of a particular institution necessarily involves many subjective, non-quantifiable factors. The assessment of these factors is best performed by those closely involved in the life of the institu-tion, not by judges. As a matter of sound public policy, an institution of higher learning should be free to make such decisions. Engrafting a right to judicial second-guessing of the soundness of personnel decisions made under employment contracts would hamper this decision-making freedom. It would require courts to inquire into the truth or falsity of matters which are not amenable to such determination.

Trial Court Opinion, 6/20/07, at 1 n. 1 (citing *Baker, supra*).

¶ 18 Order affirmed.

¶ 19 Judge Klein files a Concurring Statement.

## CONCURRING STATEMENT BY KLEIN, J.:

¶ 1 I join in the result of the majority, and write separately merely to highlight a few of the principles applicable to this complicated situation.

¶ 2 1. The binding document in tenure determinations is the contract between the applicant and the university, usually a union contract. A faculty handbook does not override the underlying union contract when it comes to tenure decisions.

¶ 3 2. A university is not bound to follow the same tenure requirements that are in place when a faculty member takes employment in a tenure track position. The faculty member takes the risk that the requirements will change before he or she achieves tenure.

¶ 4 3. The mere fact that the department recommends tenure is not binding on the ultimate decision maker, in this case, the university president.

¶ 5 4. If the president makes the decision and there is an appeal procedure, that procedure must be followed. While there was some indication in this case that on appeal the president's decision was not

supported, a review of the record shows that this was not the case.

¶ 6 Therefore, I fully agree with the decision of the majority.