**ADP, INC., Appellee**

v.

**MORROW MOTORS INC., t/d/b/a Morrow Ford, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 19, 2008.
Filed March 26, 2009.

John R. O'Keefe, Jr., Pittsburgh, for appellant.

Ronald G. Backer, Pittsburgh, for appellee.

BEFORE: BOWES, FREEDBERG, and POPOVICH, JJ.

OPINION BY POPOVICH, J.:

¶ 1 Appellant Morrow Motors, Inc., t/d/b/a Morrow Ford, appeals the entry of summary judgment in the amount of $131,340.60 in favor of Appellee ADP, Inc. We reverse.

¶ 2 A review of the record discloses that the parties entered into a Master Service Agreement (hereinafter known as the MSA or the Agreement). Under the terms of the MSA, Appellee was to provide computer software and associated equipment that facilitated inventory management services for Appellant's automobile dealerships. The length of the Agreement was for a period commencing with the date it was signed on March 27, 1998, and continued until all Schedules[1] were completed, which translated into an expiration date of September 20, 2006 (e.g., Schedule 68004129—Appellant's contract to purchase equipment, software, and/or services from Appellee—commenced on September 20, 1999, and terminated eighty-four months later, i.e., September 20, 2006). Stated otherwise, Appellant was obligated to utilize Appellee's computer services for a fixed term set forth in the Agreement, as that term was extended pursuant to the Schedules. Therefore, when Appellant notified Appellee that it was terminating the MSA on March 24, 2005, Appellee filed a complaint alleging that Appellant was in default, which entitled Appellee to an early termination fee. See Appellee's Amended Complaint, 3/31/06, at ¶ 9.

¶ 3 In reply, Appellant denied entering into any Schedules extending the term of the MSA. See Appellant's Amended Answer and New Matter, 5/4/07, at ¶ 3. Appellant also alleged that it was not in default when it gave Appellee notification of not renewing the equipment lease agreements (Schedules) and the MSA. Further, Appellant asserted that the MSA and Schedules both expired in accordance with their provisions in June of 2005—the point in time when Appellee recovered "all its leased equipment (upon which the software and other computer programs were resident)," and Appellee's repossession foreclosed Appellant's exposure to liability. See Appellant's Amended Answer and New Matter, 5/4/07, at ¶¶ 15, 16.

¶ 4 After the exchange of additional pleadings, Appellee filed a motion for summary judgment resulting in a money award, which, upon Appellant's reconsideration petition, was reduced by the

---

1. Some of the Schedules that made up the MSA were captioned client information schedule, equipment purchase and maintenance schedule, software license schedule, software update schedule, trade-in schedule, dealer national parts locator schedule, credit check/ancillary price schedule, other considerations (UPGRADE) schedule, and summary schedule. Each Schedule had a separate commencement date, e.g., the client information schedule was executed by both parties on September 20, 1999, which would last for a period of eighty-four (84) months effective from the date of execution. Reproduced Record at 95a. Further, the Schedule associated with equipment and software was executed on June 2, 2003, which term was set for sixty (60) months from the date of execution. Reproduced Record at 118a.

trial court to $131,340.60. Appellant filed a notice of appeal but no Pa.R.A.P.1925(b) statement was ordered by the trial court. Appellant raises two issues for our review, the first of which states: "The [trial c]ourt committed an error of law in granting the Motion for Summary Judgment. Genuine issues of material fact necessary for the determination of the subject of this action exist, and the [trial c]ourt improperly granted summary judgment." *See* Appellant's brief, at 4.

Our standard of review on an appeal from the grant of a motion for summary judgment is well-settled. A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.

In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment

may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will review the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*Shepard v. Temple University*, 948 A.2d 852, 856 (Pa.Super.2008) (quoting *Murphy v. Duquesne University*, 565 Pa. 571, 777 A.2d 418, 429 (2001)). We shall now assess Appellant's contention that the trial court erred in granting Appellee's motion for summary judgment given the existence of genuine issues of material fact as to whether the parties could modify the MSA by means other than the written consent of the parties. *See* MSA, 3/27/98, at ¶ 21A.[2]

2. Although the MSA contains language that it is to be construed and enforced in connection with the laws of New Jersey, *see* MSA, 3/27/97, at ¶ 21H, the choice-of-law issue was not presented by either party to the trial court, and neither party has alleged that New Jersey substantive law on contract modification differs from Pennsylvania's law in their arguments to the trial court or to this Court. Accordingly, we will apply Pennsylvania substantive law in our analysis of this case. *Cf. Garden State Bldgs., L.P. v. First Fidelity Bank, N.A.*, 305 N.J.Super. 510, 702 A.2d 1315, 1317 n. 3 (1997) (Assuming state laws were same because neither party argued laws were different; therefore, applied forum state law); *see also Morgan Trailer Mfg. Co. v. Hydraroll, Ltd.*, 759 A.2d 926, 930 n. 2 (Pa.Super.2000) (This Court would not interpret apparently valid choice-of-law clause in contract because issue was not raised before Superior Court). As an aside and noted *infra*, Pennsylvania's

and New Jersey's substantive law on contract modification is the same.

Further, choice of law analysis only applies to conflicts of substantive law. *Wilson v. Transp. Ins. Co.*, 889 A.2d 563, 571 (Pa.Super.2005) (citations omitted). Whenever Pennsylvania is the chosen forum state for a civil action, our state's procedural rules, *i.e.*, the Pennsylvania Rules of Civil Procedure, govern, no matter what substantive law our courts must apply in resolving the underlying legal issues. *Ferraro v. McCarthy–Pascuzzo*, 777 A.2d 1128, 1137 (Pa.Super.2001) (citations omitted). Accordingly, we apply our summary judgment scope and standard of review. *Smith v. Commonwealth Nat'l Bank*, 384 Pa.Super. 65, 557 A.2d 775 (1989) (Trial court applied Pennsylvania procedural law to determine if entry of summary judgment was proper even though insurance agreement contained language indicating that it was to be governed by the laws of New York). Furthermore, in reviewing both parties' briefs, each

In support thereof, Appellant produced the affidavit of its controller Diane Housholder, which states, as herein relevant:

1. I was employed by [Appellant] ( [”]Ron Lewis Automotive Group”) as controller in April 2003.

2. In April 2003, I contacted [Appellee] in an effort to minimize [Appellant's] ongoing expenses related to the [. . .] MSA.

3. I was thereafter informed by [Appellee's] representatives that [Appellant] should compose and forward a notice of cancellation to [Appellee] concerning the unwanted equipment or services, that the same would be processed, honored and even that the cancellation desired could be retroactively applied.

4. On April 30, 2003, Tom Cochran, Executive Vice President of [Appellant] forwarded written notification to [Appellee's] Dealer Service Division that [Appellant] was canceling certain monthly maintenance services retroactive to May 1, 2003. A copy of the notice of termination dated April 30, 2003 is attached hereto, marked Exhibit "A" and incorporated herein.

5. [Appellee] accepted that notice and immediately thereafter informed me that it cancelled the specified service contracts retroactive to May 1, 2003, and thereafter issued credits to [Appellant] with respect to the same.

6. On March 24, 2005, I notified [Appellee's] Commercial Leasing that [Appellant's] Ron Lewis Automotive Group was not renewing or continuing the Equipment Lease and the Master Service Agreements and restated my understanding that all agreements/leases would expire July 7, 2005. A copy of the March 24, 2005 notice of termination is attached hereto, marked Exhibit "B" and incorporated herein.

7. On July 27, 2005, I was contacted by [Appellee's] representative Joe Coss who said he needed to pick up the [Appellee's] equipment on August 18, 2005. On August 18, 2005, Joe Coss of [Appellee] picked up [Appellee's] equipment from its installed location at [Appellant's] Beaver Falls, PA [location,] and also from a related installed location at [Appellant's] Ellwood City Motors in Ellwood City, PA. In addition, [Appellee] arranged to pick up the equipment from the [Appellant's] Pleasant Hills location at the same time. Copies of documentation supporting the pick up of equipment is attached hereto, collectively marked

---

correctly cites case law and rules of civil procedure rooted in Pennsylvania jurisprudence in deciding the summary judgment issue. *See* Appellant's brief, at 2 ("The scope of review of an order granting summary judgment is plenary. *State Farm Mut. Auto. Ins. Co. v. Universal Underwriters Ins. Co.*, 549 Pa. 518, 521–22, 701 A.2d 1330, 1331 (1997). This Court must view the record of summary judgment in the light most favorable to [Appellant], and all doubts as to the existence of a genuine issue of material fact must be resolved against [Appellee]. *Id.*"); Appellee's brief, at 7 ("The Pennsylvania Rules of Civil Procedure instruct that in considering a motion for summary judgment, the court shall enter judgment whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense. Pa.R.Civ.P. 1035.2(1). Summary judgment is proper in cases in which 'an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to a cause of action or defense in which a jury trial would require the issues be submitted to a jury.' Pa.R.Civ.P. 1035.2(2)."). Consistent with both parties' positions, we will look to Pennsylvania law to determine the propriety of the trial court's grant of summary judgment in favor of Appellee.

Exhibit "C" and incorporated herein.

8. On August 19, 2005, I spoke with Diane Sebastian of [Appellee] and re[-]faxed the termination letter of March 24, 2005. Sebastian indicated by phone that she would pro-[rate] the bill through July 7, 2005, all in accord with the course of performance between [Appellee] and [Appellant].

9. I sent a letter dated August 31, 2005 to [Appellee] confirming the credit to be issued on the July, 2005 invoice. A copy of the August 31, 2005 letter is attached hereto, marked Exhibit "D" and incorporated herein.

10. I sent additional correspondence to [Appellee's] representative "Jim" and restated the understanding that was reached with Diane Sebastian of [Appellee], consistent with the course of performance between [Appellee] and [Appellant], to [prorate] the July 2005 invoice reflecting termination of the agreements/leases. Copies of letter confirming termination and cessation of billing are attached hereto, collectively marked Exhibit "E" and incorporated herein.

11. On October 21, 2005, Allen Collins, [Appellee's] account representative for [Appellant], told me that he would correct invoices and that [Appellant] would receive no more billings from [Appellee]. Collins also told me that [Appellant] could have cancelled all remaining support [Schedules] with just 30 day[s] notice but that [Appellee] preferred 90 day[s] notice in order to have time for billing adjustment.

12. On October 31, 2005, [Appellee] issued credit adjustments to [Appellant] in the aggregate of $7,290.38 covering a variety of separate line items, including many of those for which [Appellee] seeks recovery in the within action. A copy of the credit invoices referenced herein and below are attached hereto, collectively marked Exhibit "F" and incorporated herein.

13. On November 17, 2005, [Appellee] issued four groupings of credit adjustments to [Appellant] in the amounts of $2,553.87, $2,440.86, $2,303.65 and $5,367.44; and on December 11, 2005, [Appellee] issued credit adjustments to [Appellant] in the aggregate of $4,741.93, all of which adjustment groupings included additional [ . . . ] line items for which [Appellee] currently seeks recovery. These are consistent with the communications and representations made by [Appellee].

14. [Appellant] received no additional invoices from [Appellee] following December 2005.

15. [Appellee's] recovery of its equipment from [Appellant's] custody, pursuant to the normal and regular termination of the Equipment Lease Agreement and the [MSA], had rendered impossible [Appellant's] use of any of [Appellee's] software and other programs, and particularly the upgrades, additions or deletions thereto, inasmuch as such were all resident upon the very leased equipment recovered by [Appellee] upon termination of the leases.

16. [ . . . ].

*See* Appellant's ***AFFIDAVIT OF DIANE HOUSHOLDER,*** 10/10/07; Record No. 27. It seems to us that, if Appellant proves the facts set out in the affidavit, the burden will be cast upon Appellee to relieve itself

from participating in and condoning the modification of the Agreement and that consideration is enough to carry the case to the jury. *Martinez v. Earnshaw*, 143 Pa. 479, 486, 22 A. 668, 669 (1891); *see also Gruenwald v. Advanced Computer Applications, Inc.*, 730 A.2d 1004, 1008–09 (Pa.Super.1999) ("[T]he non-moving party may respond to the motion [for summary judgment] by relying solely on an affidavit to create a genuine issue of material fact, *i.e.*, a credibility determination for the jury." (citations omitted)); *East Texas Motor Freight, Diamond v. Lloyd*, 335 Pa.Super. 464, 484 A.2d 797 (1984) (It is within jury's province to define terms of parol modification of contract and, unless party's version of modification is not supported, trial court should not declare that modification did not exist). In like fashion, whether Appellee's employees/agents had the authority to modify the Agreement is a question of fact for the jury to decide.[3] *See Turner Hydraulics, Inc. v. Susquehanna Construction Corp.*, 414 Pa.Super. 130, 606 A.2d 532, 534–35 (1992) ("The nature and extent of an agent's authority is a question of fact for the trier. Also, the trier-of-fact is to evaluate the conduct of the parties in light of the circumstances in determining the existence of apparent authority. Apparent authority may be derived from a course of dealing or a single transaction." (citations omitted)).

¶ 5 The record clearly indicates that the 1998 Agreement and accompanying Schedules encompassed the parties' entire economic relationship, which precluded modification except by a writing signed by both parties. *See* MSA, 3/27/98, at ¶ 21A. Albeit the Agreement states that it cannot be altered except in writing, the law in this jurisdiction holds otherwise; to-wit:

> [A] written contract may be orally modified, even when the contract expressly provides that modifications must be in writing. [ . . . ] *Somerset Community Hospital v. Mitchell*, 454 Pa.Super. 188, 685 A.2d 141 (1996). As *Somerset* indicates, "an agreement that prohibits non-written modification may be modified by [a] subsequent oral agreement if the parties' conduct clearly shows the intent to waive the requirement that the amendments be made in writing." Finally, an oral modification of a written contract must be proved by clear, precise and convincing evidence.

*Fina v. Fina*, 737 A.2d 760, 764 (Pa.Super.1999) (citations omitted).[4] *Accord Solazo v. Boyle*, 365 Pa. 586, 588, 76 A.2d

---

**3.** It is undisputed that language existed in the MSA and accompanying Schedules that proscribed "marketing" and "sales" representatives from contractually binding Appellee. Reproduced Record at 20a, 30a. Viewing the evidence in a light most favorable to the non-moving party at this summary judgment stage, we may not conclude that the personnel Appellant's controller spoke and wrote to were "marketing" and/or "sales" representatives merely by their nomenclatures. On the contrary, the nature and extent of an agent's authority is a question of fact for the trier-of-fact to decide. *See Joyner v. Harleysville Insurance Co.*, 393 Pa.Super. 386, 574 A.2d 664, 668 (1990), *appeal denied*, 527 Pa. 587, 588 A.2d 510 (1990).

**4.** As we previously noted, the MSA stated that it was to be construed and enforced by the laws of New Jersey. In Pennsylvania, the choice of law analysis first entails a determination of whether the laws of the competing states actually differ, in this instance, Pennsylvania's and New Jersey's laws regarding contract modification. If the laws do not differ, no further analysis is necessary. If we determine a conflict is present, we must analyze the governmental interests underlying the issue and determine which state has the greater interest in the application of its law. *Wilson*, 889 A.2d at 571 (citation omitted).

As noted *infra*, Pennsylvania's and New Jersey's substantive law on oral contract modification is the same. Accordingly, our choice of law analysis needs to go no further.

179, 180 (1950) ("It is true that a written contract may be modified by parol [ . . . ]."); *Accu–Weather, Inc. v. Prospect Communications, Inc.*, 435 Pa.Super. 93, 644 A.2d 1251, 1256 n. 5 (1994) ("Whether subsequent oral communications modified the agreement and permitted [Appellee] to terminate the contract is a question of fact." (citation omitted)); *Elliot & Frantz, Inc. v. Ingersoll–Rand Co.*, 457 F.3d 312, 322 (3rd Cir.2006) ("Under New Jersey law, parties to an existing contract, by mutual assent, may modify their contract, and 'modification can be proved by an explicit agreement to modify, or by the actions and conduct of the parties, so long as the intention to modify is mutual and clear.' *County of Morris v. Fauver*, 153 N.J. 80, 707 A.2d 958, 967 (1998). 'A proposed modification by one party to a contract must be accepted by the other to constitute mutual assent to modify,' and, '[u]nilateral statements or actions made after an agreement has been reached or added to a completed agreement clearly do not serve to modify the original terms of a contract [ . . . ].' *Id.* In addition, an agreement to modify must be based on new or additional consideration. *Id.; see also Unalachtigo Band of the Nanticoke–Lenni Lenape Nation v. State*, 375 N.J.Super. 330, 867 A.2d 1222, 1230 (2005)."); *Estate of Connelly v. United States*, 398 F.Supp. 815, 827 (D.N.J.1975) ("Every agreement, no matter how firmly drawn, may always be modified by another agreement. Even a formal agreement which expressly states that it cannot be modified except in writing, is subject to modification by oral agreement since the requirement for a writing is itself subject to modification." (citation omitted)).

¶ 6 Viewing the facts in a light most favorable to the non-moving party, as we must, *see Shepard, supra,* the parties agreed to terminate the Agreement, partially, on April 30, 2003, by written notification that Appellant was canceling certain monthly services retroactive to December 1, 2002.[5] Subsequently, Appellant provided a second notice, which confirmed an understanding between the parties that the MSA would terminate completely effective July 7, 2005.[6] *See* Appellant's brief, at 11. More particularly, Appellant's vice-president and controller each contacted Appellee's representatives in writing and telephonically concerning the termination of the 1998 Agreement and Schedules in 2003 (vice-president) and 2005 (controller), the latter of whom interacted with Appellee's representatives (Joe Coss, Diane Sebastian, "Jim," and Allen Collins) from July 27, 2005, through October 21, 2005, and produced credit adjustments issued by Appellee's representatives in favor of Appellant in the amounts of $7,290.38

---

**5.** The April 30, 2003, letter was signed by Appellant's executive vice-president Tom Cochran, addressed to Appellee's dealer service division in Clifton, New Jersey, and gave notice of canceling certain "monthly maintenance fees" retroactive from May 1, 2003. Reproduced Record at 167a–168a.

**6.** The March 24, 2005 letter was signed by Appellant's controller Diane Housholder, addressed to Appellee's commercial leasing department in Roseland, New Jersey, covered contracts # 005–0039597–002; # 005–0039597–003; and # 005–0039597–004, and stated:

> This letter will serve as notification of our intent NOT to renew or continue the above[-]referenced leases. It is our understanding that all leases/agreements with [Appellee] expire July 7, 2005.
>
> If you require any additional information or paperwork please direct your request in writing to [Appellant's] Ron Lewis Automotive Group, 300 Ninth Avenue, Beaver Falls, PA 15010, attention Diane Housholder[—Controller].

Reproduced Record at 169a.

(on October 31, 2005), $12,665.82 (on November 17, 2005), and $4,741.93 (on December 11, 2005). *See* Appellant's *AFFIDAVIT OF DIANE HOUSHOLDER*, ¶¶ 7, 8, and 10–13. It seems incongruous for Appellee to argue that Appellant's refutation of the MSA triggered its entitlement to an early termination fee, yet Appellee credited Appellant's account a total of $24,698.13 thereafter. Such conduct (accounting practice) could be read as reflective of the parties' intent to waive the requirement that amendments be in writing and to eliminate the early termination fee, but such an interpretation is for the trier-of-fact to make, not this Court. *See Martinez; East Texas Motor Freight, Diamond, supra.*

■ ¶ 7 The central question in this case remains whether Appellee and Appellant had the intent to terminate jointly the Agreement and, subsumed therein, is whether Appellee's employees had the authority to approve such termination. The record reveals that Appellant gave Appellee oral/written notice of termination subsequent to Appellant's initial effort to terminate the Agreement in April, 2003. Appellant asserts in the affidavit of its controller that, through oral/written communications following the notice of March 24, 2005, it evidenced continuously an intention to terminate the Agreement at the next expiration date of July 7, 2005. *See* Appellant's *AFFIDAVIT OF DIANE HOUSHOLDER*, 10/10/07, at ¶¶ 3, 4, and 6. In reply, Appellee denied that Appellant's March 24, 2005 notification to terminate and not renew the documents in June of 2005 was in accordance with the Agreement. *See* Appellee's Reply to Amended New Matter, 4/24/07, at ¶ 15. Further, Appellee denies that its representatives had the authority to bind it to an early termination of the Agreement. *See* Appellee's Motion for Summary Judgment, 9/12/07, at ¶ 13. Thus, a genuine issue of material fact exists, *i.e.,* whether Appellee evidenced an intent to terminate the Agreement through its representatives' conduct; to-wit: 1) Communicating with Appellant regarding closing out the account; 2) Crediting Appellant's account; 3) Removing equipment from Appellant's worksites; and 4) Discontinuing invoicing services. As a result, the trial court erred in entering summary judgment in favor of Appellee as that right is not clear and free of doubt. *See Accu–Weather, Inc.,* 644 A.2d at 1255–56. Accordingly, we reverse and remand for proceedings consistent with this Opinion.

¶ 8 Judgment reversed. Case remanded for further proceedings. Jurisdiction relinquished.[7]

---

7. With our reversal of the grant of summary judgment in favor of Appellee, we need not address Appellant's second issue raised on appeal regarding whether the Agreement provided for simple or compound interest.