J-A24014-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| HELENE FURJAN | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| UNIVERSITY OF PENNSYLVANIA | |
| | No. 718 EDA 2016 |

Appeal from the Order February 18, 2016
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): Case No. 140303605

BEFORE:  BOWES, OTT AND SOLANO, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED DECEMBER 13, 2016**

Helene Furjan appeals from the judgment entered on the defense verdict in favor of University of Pennsylvania (the "University") following a six-day non-jury trial in a breach of contract action stemming from the denial of tenure.  We affirm.

On July 1, 2005, Appellant started a four-year term as Assistant Professor of Architecture at the University of Pennsylvania School of Design.  The University had the option of reappointing Appellant for an additional three years with a mandatory tenure review during the 2010-2011 academic year.  The parties amended the tenure track during 2008 to extend the initial appointment by one year and to initiate the tenure process during academic year 2011-2012.  Appellant served as Assistant Professor for the

required term, and during fall 2011, the University started the tenure process.

The University's tenure procedure is governed by the University of Pennsylvania Handbook for Faculty and Academic Administrators ("University Handbook"), and the specific steps in the tenure review process are outlined in a handbook designed explicitly for the School of Design ("Design Handbook"). Pursuant to those documents, evidence of a candidate's scholarship, professional accomplishments, and record of high quality teaching is compiled in a tenure dossier, which various committees and administrators review to decide whether to recommend tenure to the University's board of trustees. The trial court summarized the University's five-step process as follows:

> The process begins with the appointment of a tenured faculty committee, led by the chair of the department. An *ad hoc* committee can be appointed to assist and review in detail the candidate's scholarship and teaching. The faculty committee's findings are then referred to a personnel committee, consisting of tenured faculty members. Their recommendation is then sent to the Dean of the school, who conducts an independent review. The Dean's findings, if there is a positive recommendation, is then sent to the Provost. The Provost can conduct his or her independent evaluation and if the Provost approves, that recommendation for tenure is sent to the Board of Trustees of the University for final approval.

Trial Court Opinion, 3/16/16, at 2-3.

Appellant did not advance beyond the third step of the process. Marilyn Taylor, Dean of the School of Design, testified during the trial that successful tenure candidates typically receive unanimous or near unanimous

approval at the first two stages of review. However, Appellant survived the faculty committee by a slim 4-3 vote. Furthermore, although Appellant initially passed the five-member personnel committee by a correspondingly thin 3-2 margin, the committee's telephone conference was marred by technical problems that impeded communication, and following the meeting, one committee member desired to change his or her vote. Thus, in accordance with Dean Taylor's directions, the personnel committee reconvened approximately twenty days later and revisited Appellant's tenure dossier *de novo*. At the close of that meeting, the committee voted unanimously to recommend to deny tenure. Thereafter, consistent with the established procedure, Dean Taylor conducted her independent evaluation and denied the application for tenure. As the Dean of the School of Design did not recommend tenure, the matter did not proceed to the Provost or the board of trustees.

Pursuant to the tenure process, Appellant requested a hearing before the University's grievance committee. That committee first conferred with Dean Taylor about her decision and then denied a hearing because Appellant's assertions did not satisfy the threshold for a grievance hearing, *i.e.*, she did not assert arbitrary and capricious decision making or an action that was non-compliant with University procedures. In essence, the grievance committee determined that the tenure procedure that the School of Design followed was fair, just, and in compliance with University

regulations, and that the Dean's decision was neither arbitrary nor capricious. Appellant's seven–year appointment terminated on June 30, 2013.

Appellant sued the University for breach of contract and asserted a claim of promissory estoppel. The University countered with a motion for summary judgment arguing that Appellant's breach of contract claim failed because she did not establish a contractual right to anything beyond the mandatory tenure review during 2011. As it relates to promissory estoppel, the University asserted that the only promise it made to Appellant was to consider her for tenure at a particular time in her academic career, which it fulfilled. After a motions judge denied the motion summarily, the matter proceeded to a non-jury trial before a different jurist.

At the outset of the trial, the trial court inquired about the basis of Appellant's breach of contract action. It stated,

> Now, before we get into opening statements, I think it's important that we know where we're headed in this case so there are certain parameters here.
>
> I am not here to review the merits of whether the professor should have been granted tenure or not, and I think the cases are pretty clear and I'd like to quote from the **Shepard** case, **Shepard** [**v.**] **Temple University**, [948 A.2d 852 (Pa.Super. 2008)], which says that while a professor is free to assert in the court of law that the process of [tenure] that was afforded to her did not comply with the contract terms or letters or whatever it was that was incorporated in the contract, she is not free to demand that a jury reconsider and re-decide the merits of the case.

And I think the rationale is laid out by a colleague of mine and was quoted by the Superior Court that the assessment of these factors involving tenure are best performed by those closely involved in the life of the institution and not by judges.

. . . .

But I've got to look at it. Was there a contract? Was there a written contract here? Was there just a letter? Did the letter refer to any of the handbooks? These are the things that I have to key in on in order to understand whether the procedures of the University were properly met.

N.T., 11/19/15, 4-6. After hearing the relevant evidence regarding the two employee handbooks and the documents exchanged when the employment relationship was formed, the trial court ultimately decided that a contract existed insofar as it related to the procedure outlining the University's tenure review.

Over the course of six days, Appellant presented fourteen witnesses and testified on her own behalf. The University introduced into evidence a single document memorializing an email exchange between Appellant and a witness from the University's Office of Affirmative Action. At the close of trial, the court found that the University performed the tenure review in accordance with the procedure defined in the two handbooks. Consequently, it concluded that Appellant neither satisfied her burden of proving a breach of contract or establishing the elements of promissory estoppel. Concerning breach of contract, it reasoned, "The University fulfilled its obligation of granting tenure review as promised. That was the promise here." N.T., 11/30/15, at 77. As it relates to promissory estoppel, the court opined,

"There wasn't any additional promise made that would induce reliance." *Id*. at 78. Thus, the trial court entered a verdict in favor of the University.

Appellant filed a timely post-trial motion asserting, *inter alia*, that the trial court: (1) excluded relevant and material evidence, including the deposition transcripts of two unidentified witnesses; (2) misapplied controlling legal authority; (3) violated principles of coordinate jurisdiction; and (4) improperly precluded the trial from continuing beyond November 30, 2015. Significantly, Appellant neglected to assert that the trial court overlooked any procedural irregularities in the tenure review process. This appeal followed the trial court order denying post-trial relief and the entry of judgment on the verdict in favor of the University.

Appellant presents five questions for our review:

A.   Did the Trial Court's November 19, 2015, opening remarks . . . disclose that the Trial Court had, before hearing argument or testimony at trial, made material determinations of law and fact in derogation of the law of the case doctrine/coordinate jurisdiction rule and prejudicial to [Appellant]?

B.   By relying on [the] Superior Court's [ruling in] *Shepard v. Temple University*, 948 A.2d 852 (Pa. Super. 2008) . . . and disregarding the opinion of the Supreme Court in *Murphy v. Duquesne University of the Holy Ghost*, 565 Pa. 571, 777 A.2d 418 (2001) . . . did the Trial Court commit error, and if it did, does that error alone entitle [Appellant] to the relief . . . ?

C.   Does the Trial Court's December 1, 2015 Order . . . materially misstate [the] Superior Court's . . . statement of "the law on this subject" in *Shepard* ?

D.   [Did] the Trial Court's fundamental errors of law referenced in . . . a., b. and c. above . . . [deny Appellant the] right to present relevant, material evidence central to

adjudicating the claims [she] presented . . . [and violate] . . . the law of the case doctrine / coordinate jurisdiction rule[?]

E.    Did the Trial [Court] deny [Appellant] a fair trial [in] this matter by arbitrarily limiting the duration of the trial to conform to the time remaining in the trial judge's authority to sit as a Philadelphia Court of Common Pleas judge?

Appellant's brief at 9-10 (footnote omitted).

Instantly, the trial court deemed Appellant's post-trial motion as a motion for a new trial. **See** Trial Court Opinion at 5. In **Kindermann v. Cunningham**, 110 A.3d 191, 193 (Pa.Super. 2015), we reiterated, "Trial courts have broad discretion to grant or deny a new trial and, absent a clear abuse of discretion by the trial court, appellate courts must not interfere with the trial court's authority to grant or deny a new trial." It is well-ensconced in our jurisprudence that "[a]n abuse of discretion . . . requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support from the evidence or the record so as to be clearly erroneous." **Polett v. Public Communications, Inc**., 126 A.3d 895, 914 (Pa. 2015).

The following legal principles control our disposition. The trial court's role in breach of contract cases involving a university's decision to deny tenure to a faculty member is limited to determining whether the university complied with the procedure that it was contractually obligated to extend to the applicant. **Shepard**, **supra** at 856-858 (citing **Ferrer v. Trustees of University of Pennsylvania**, 825 A.2d 591 (Pa. 2002) and **Murphy v.**

*Duquesne University*, 777 A.2d 418 (Pa. 2001)).  At no point will the trial court engage in a substantive review of a university's tenure decision.  As our Supreme Court explained in *Baker v. Lafayette College*, 532 A.2d 399, 403 (Pa. 1987), "This Court has no jurisdiction to review the factual determinations of a college's governing body unless it can be clearly demonstrated that the body violated its own procedures."   In *Baker*, the High Court reasoned as follows,

> As a matter of sound public policy, an institution of higher learning should be free to make such decisions. Engrafting a right to judicial second-guessing of the soundness of personnel decisions made under employment contracts would hamper this decision-making freedom. It would require courts to inquire into the truth or falsity of matters which are not amenable to such determination[.]

*Baker*, *supra* at 257.

Appellant's first complaint is that the trial court had preconceived notions regarding what evidence would be relevant to the breach of contract action.  Recall that, at the outset of trial, the court noted that it would not reassess the merits of the University's decision to deny Appellant tenure, and observed that, as a threshold matter, Appellant was required to establish the particulars of the University's contractual obligation to conduct the tenure review.  Appellant argues that the previous order denying the University's motion for summary judgment effectively established the contract's existence as the law of the case and that the trial court's opening remarks violated the coordinate jurisdiction rule.  No relief is due.

Stated simply, the coordinate jurisdiction rule "recognize[s] that judges of coordinate jurisdiction sitting in the same case should not overrule each others' decisions" absent exceptional circumstances. **Commonwealth v. Starr**, 664 A.2d 1326, 1331 (Pa. 1995). Instantly, the order denying the University's motion for summary judgment did no more than establish the existence of an issue of material fact as to whether the Faculty Handbook and Design Handbook created any contractual obligations. Contrary to Appellant's protestations, the prior order did not establish the contractual obligation *per se* or set forth the parameters of the University's tenure review process. Indeed, as the trial court accurately outlined in its introductory statement that Appellant now seeks to challenge, Appellant was required to prove these elements of her case during trial.

Appellant's attempt to implicate the law-of-the-case doctrine in order to circumvent her evidentiary burden fails. First, the trial court's introductory statement was not a legal ruling but rather an indication of its perspective of this case and Appellant's burdens of proof and persuasion. Second, even to the extent that the remarks could be construed as a ruling of law, the trial court's statements did not overrule the motions court order denying the University's motion for summary judgment. Indeed, the trial court's discussion of the legal framework necessarily recognized the existence of material facts regarding the contractual obligations and simply

reminded Appellant of her ultimate burden of proving those obligations and the University's failure to perform.

Moreover, assuming that the statement was tantamount to a legal ruling that was entered in contravention of the motions court's prior order, the present argument is waived because Appellant failed to object to the court's description of the applicable law at that time. When the trial court advised Appellant, "You have to show me some . . . statements made by representatives of the University or documents that show . . . what [was] promised as far as tenure, what the procedures were . . . , and . . . that they failed to adhere to it," Appellant's counsel responded, "**[w]e understand that, Your Honor. I understand it. [Appellant] understands it**." N.T., 11/19/15, at 10 (emphasis added). As Appellant acknowledged that she had the burden of proving the existence of a contract obligation, no relief is due.

Next, we address collectively the issues that Appellant identified under the headings B, C, and D, in her statement of questions presented. The crux of those assertions is that the trial court misinterpreted the relevant law as it is outlined in our discussion in **Shepard**, **supra**, and the High Court's analyses in **Ferrer**, **supra**, and **Murphy**, **supra**. In ruling against Appellant, the trial court: (1) determined that the University had a contractual obligation to perform the tenure review in a specific manner; (2) limited its consideration of Appellant's evidence to that issue; and (3)

ultimately found that the University's tenure review process was "scrupulously followed." Trial Court Opinion, 3/16/16, at 7.

Appellant vaguely asserts that she did, in fact, claim a procedural breach, and she implies that the prevailing case law permitted her to present evidence or examine witnesses on issues that glanced behind the curtain of academia to determine whether the tenure process was carried out in good faith, which she argues is an implied component of the University's contractual obligation.

At its core, Appellant's complaint assails the trial court's evidentiary determinations. Generally, "[o]ur standard of review for a trial court's evidentiary rulings is narrow." *Commonwealth v. Mickel*, 142 A.3d 870, 874 (Pa.Super 2016). Therefore, "[t]he admissibility of evidence is solely within the discretion of the trial court . . . [.]" *Id*. As we previously noted, "[a]n abuse of discretion . . . requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support from the evidence or the record so as to be clearly erroneous." *Polett*, *supra* at 15.

Appellant's rambling discourse as to how the trial court misread the prevailing case law neglected to challenge a single evidentiary ruling. In fact, Appellant failed in both her post-trial motion and in her appellate brief to identify the specific evidence or witness testimony that she claims the trial court precluded her from presenting during the six-day trial that was material to this issue. To the contrary, the post-trial motion cites baldly to

several pages in the notes of testimony, refers to two unidentified witnesses and requests the resumption of Appellant's case-in-chief in order to "recall and resume questioning **any** witness already heard; and . . . call and question **all** witnesses named on Exhibit "A" to Plaintiff's Pre-Trial Conference Memorandum . . . and not yet heard." Post-Trial Motion, 12/11/15, at 2, 4 (emphases added).

Likewise, the portion of her argument relevant to this issue on appeal consists of the following obscure statement:

> [Appellant] sought to ask no question that did not seek evidence having a tendency to make a fact of consequence in determining the action brought before the [c]ourt after Judge Wright Padilla's order more or less probable than it would be without the evidence sought; no witness [Appellant] sought to call who did not have knowledge of such evidence; no document she sought to introduce, or on which question a witness, that did not contain such evidence.
>
> Many such witnesses, questions, and documents were found by the trial court to be without relevance to the claims to which the [t]rial [c]ourt limited [Appellant], or to address issues held by the trial court to be non-justiciable.

Appellant's brief at 44-45. Again, Appellant neglected to highlight any evidentiary rulings for this Court to review.

As Appellant failed to develop her argument by identifying the evidence that she asserts the trial court erred in precluding, we cannot

perform meaningful appellate review.[1]  The issue is waived.  **_In re W.H._**, 25 A.3d 330, 339 n.3 (Pa.Super. 2011) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived."); **_Commonwealth v. Genovese_**, 675 A.2d 331, 334 (Pa.Super. 1996) (arguments not properly developed on appeal are waived).

Appellant's final claim is that the trial court abbreviated the non-jury trial to conform with its certification to preside over the matter as a senior judge.  Appellant notes that, as a senior judge, the trial court's appointment was scheduled to expire after November 30, 2015, and would not resume until March of 2016.  The entirety of Appellant's legal argument on this issue follows:

> The [t]rial [j]udge forcefully rejects the contention that [Appellant], or her counsel, were under any unfair limitation on the time allowed them within which to try [her] case.
>
> There was perhaps sufficient time to present the case that [the University] argued and the [t]rial [j]udge held was properly before the [c]ourt. That case was not the case that . . . [the]

---

[1] While not referenced in Appellant's argument, we observe that Appellant attached to her brief an appendix that purports to chart, *inter alia*, her attempts to elicit evidence from witness and the court's refusal to admit the evidence.  This table is useless, however, as it fails to identify the witnesses, evidence, or the trial court's evidentiary ruling.  It simply references two columns of page numbers from the notes of testimony for the six-day trial.  Likewise, Appellant attached to her reply brief four exhibits that span approximately one hundred pages of equally useless citations and excerpts from the notes of testimony.  At no point has Appellant identified the specific documents or testimony that she alleges the trial court erred in precluding.

Order denying [the University's] [s]ummary [j]udgment motion had put before the [c]ourt that the undersigned, on behalf of his client, sought to present.

Appellant's brief at 46.

As we explained in addressing the foregoing argument, this issue is waived due to Appellant's failure to provide any significant discussion of the claim or to develop it in a fashion capable of our review. Without any legal argument or citation to relevant legal authority, we cannot engage in meaningful appellate review. *See In re W.H.*, *supra*; *Genovese, supra*.

Furthermore, had Appellant actually presented an argument sufficient for our review, we would reject it for the reasons that the trial court stated in its opinion:

> [Appellant's] counsel had more than ample opportunity to present his case on behalf of [Appellant]. The [c]ourt spent parts of six trial days listening to the testimony from the Dean of the School of Design, [thirteen] other [witnesses, including] professors . . . and officials of the University of Pennsylvania. . . . The [c]ourt accommodated [c]ounsel in every way, including recessing early on particular days when the University could not produce a witness at that particular time. . . .
>
> In addition to giving wide latitude to counsel in the presentation of his case, it became clear from a review of the witnesses called by [Appellant] that they were of no help in supporting her claim that [the University] failed to follow the proper rules and procedures in its determination of tenure. It is obvious from this review that [Appellant] was unable to prove her case; that [Appellant's] counsel, in essence, was conducting a fishing expedition. If the [c]ourt would have acceded to [Appellant's] request [for time to present additional witnesses], there is no cause to believe that any further witnesses would have been able to aid [Appellant] in any way, shape, or form. The [c]ourt acted properly and within its sound discretion.

Consequently, [Appellant's] [p]ost [t]rial [m]otions are denied and judgment is accordingly entered.

Trial Court Opinion, 2/18/16, at 8.

For all of the foregoing reasons, we discern no basis upon which to conclude the trial court erred or abused its discretion in rejecting Appellant's claims of breach of contract and promissory estoppel and entering judgment on the verdict in favor of the University. Appellant neglected to challenge any procedural irregularities in the tenure review process, and the claims she levels on appeal are patently meritless, waived, or both.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/13/2016

- 15 -