**MICHAEL SALOVE COMPANY,**
**Appellant**

v.

**ENRICO PARTNERS, L.P., Appellee.**

**Michael Salove Company, Appellee**

v.

**Enrico Partners, L.P., Appellant.**

Superior Court of Pennsylvania.

Argued March 22, 2011.

Filed June 21, 2011.

---

Mark S. Halpern, Drexel Hill, for Salove Co.

David. R. Moffitt, Philadelphia, for Enrico Partners.

BEFORE: BOWES, ALLEN, and FREEDBERG, JJ.

OPINION BY BOWES, J.:

Michael Salove Company ("MSC") appeals from the June 4, 2010 order granting summary judgment in favor of Enrico Partners, L.P. ("Landlord"). In this action, MSC sought brokerage commissions allegedly owed pursuant to a purported oral extension of a written exclusive listing agreement. Landlord cross appeals, challenging the trial court's order of December 3, 2009, denying its claim for attorneys' fees incurred in defending the broker's lien claim. After careful review, we affirm the grant of summary judgment in favor of Landlord and we reverse the order denying Landlord's petition for reasonable attorneys' fees and costs incurred in defense of the broker's lien action. We remand for imposition of those costs and fees.

Our review of the record has revealed the following. MSC is a real estate brokerage firm and its principal, Michael Salove, is a licensed broker. MSC and Landlord entered into a written exclusive listing agreement for the lease of 14,000 square feet of vacant space owned by Landlord in The Shoppes of Villanova. Mr. Salove prepared a short form agreement on behalf of MSC and submitted it to Jerald Holtz, Landlord's Vice–President. Mr. Holtz reduced the term of the exclusive listing contract from 180 days to 120 days, and altered the compensation provisions. The parties executed the agreement as modified on February 20, 2007. The agreement, by its terms, expired on June 20, 2007.

At the end of the contract term, MSC had not procured a tenant for the vacant space that was acceptable to Landlord, nor had it identified any prospective tenants with whom it was negotiating. MSC alleged that prior to the expiration of the listing agreement, its principal, Michael Salove, entered into an oral agreement with Mr. Holtz to extend the agreement. Mr. Salove represented that

when the 120 days was coming up we also decided that it wasn't imperative to get the agreement in writing, the extension in writing, and in conversations with [Mr. Holtz] we discussed let's keep going, what adjustments we should be making to the type of people we were going after because we weren't having a great deal of collective success and as such kept our signs on the property, kept the keys, kept showing it, kept

marketing it, all the things that we had been doing after that 120 days had passed.

Deposition of Michael Salove, 12/17/09, at 54.

Mr. Salove could not recall ever discussing the duration of the extension. *Id.* at 73. It was his understanding that they would proceed in accordance with the exclusive listing agreement. *Id.* at 74. Mr. Salove did not send any emails to Mr. Holtz memorializing the conversation. *Id.* at 55. Mr. Holtz flatly denied that there was any agreement, written or oral, to extend the term of the listing agreement. Deposition of Jerald Holtz, 3/2/10, at 50–51.

During the last week in July 2007, Stephen Bajus, then Summit Fitness's landlord, contacted Landlord's owner, Dr. Caruso, on behalf of his tenant. He had previously advised Summit President Steve Mountain that he had a new tenant for Summit's space and, at Mr. Mountain's request, he agreed to assist Summit in procuring suitable rental space. Mr. Bajus expressed to Dr. Caruso Summit Fitness's interest in leasing the vacant space. Mr. Mountain was in Germany at the time, but Mr. Bajus and Dr. Caruso communicated via email about the property, and Landlord provided floor plans and other information. Mr. Bajus assured Dr. Caruso that when Steve Mountain returned, he would call to see the space and discuss the matter in greater detail.

Meanwhile, Steve Mountain asked his assistant, Chris McNellis, to view the site. Deposition of Steve Mountain, 12/17/09, at 18. Ms. NcNellis did so and saw MSC's sign in the window. *Id.* at 19. She telephoned the broker to make arrangements for Mr. Mountain to see the property upon his return. On August 3, 2007, Michael Salove accompanied Mr. Mountain on a tour of the property, and followed up with a telephone call to him "to see what his level of interest was in the space." Deposition of Michael Salove, 12/17/09, at 107–08. During that conversation, Mr. Salove suggested a meeting at the property with Landlord's people to talk about the improvement allowance and costs of construction. *Id.* at 108. A meeting occurred at the site with Steve Mountain, Jerry Holtz, Rob Shirley, and Mr. Salove in attendance. *Id.* at 109. Following that meeting, numerous emails were exchanged containing financial information on the prospective tenants. *Id.* Formal negotiations on the lease began on August 17, 2007, but Mr. Salove did not participate. Deposition of Steve Mountain, 12/17/09, at 78. The lease with Summit Fitness was executed on October 31, 2007, and MSC was not paid a brokerage commission.

On April 24, 2008, MSC filed a broker's lien claim against Landlord pursuant to the Pennsylvania Commercial Real Estate Broker's Lien Act ("CREBLA"), 68 P.S. § 1051 *et seq.* Judgment was entered on the docket in the amount of $228,960.00, creating a lien on Landlord's property. Landlord ruled MSC to file a complaint and MSC did so on May 29, 2008. MSC later amended the complaint to add claims for breach of contract, *quantum meruit,* and unjust enrichment, all based on services performed pursuant to the exclusive listing agreement. Landlord denied liability and petitioned to strike MSC's lien. After an evidentiary hearing on the petition to strike, MSC voluntarily moved to dismiss its lien, and the court ordered the lien stricken on July 29, 2009.

The action for commissions based on the breach of contract, unjust enrichment, and *quantum meruit* proceeded. After the close of discovery, Landlord moved for summary judgment on three grounds: the claims for commissions were barred by the Real Estate Licensing and Registration

Act, RELRA, 63 P.S. § 455.101 *et seq.*, because the nature of the services and the fee to be charged were not set forth in a written agreement signed by the consumer; there was no clear and convincing evidence of an oral contract; and MSC was not the "efficient procuring cause" of the transaction for which the commissions were claimed. On June 3, 2010, the trial court granted summary judgment in favor of Landlord, finding the claim for commissions pursuant to an oral modification extending the term of a written brokerage agreement to be barred under RELRA, and specifically, 63 P.S. § 455.606a(b)(1)(effective November 25, 1999). Landlord's request for attorneys' fees incurred in defending the lien was denied.

MSC appealed the grant of summary judgment and Landlord cross-appealed from the order denying attorneys' fees. The trial court directed each party to file a concise statement of errors complained of on appeal and both parties timely complied. On appeal, MSC raises only one issue for our review:

> Whether § 455.606a(b)(1) of the Pennsylvania Real Estate Licensing and Registration Act ("RELRA") precludes an oral agreement to extend the term of a commercial written real estate broker's agreement, where such written agreement, by operation of law, permits oral modifications of the written agreement.

Appellant's brief at 4.

In reviewing the grant of summary judgment our standard of review is well-settled:

> A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.

In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will review the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*Coleman v. Wyeth Pharmaceuticals, Inc.,* 6 A.3d 502, 508–09 (Pa.Super.2010) (quoting *ADP, Inc. v. Morrow Motors Inc.,* 969 A.2d 1244, 1246 (Pa.Super.2009)).

The trial court's grant of summary judgment was based on the Real Estate Licensing and Registration Act, and specifically its provision that in the absence of a signed written agreement, a broker is not entitled to recover a fee, commission, or other consideration. 63 P.S. § 455.606a(b)(1). The court held that the written contract could not be orally extended, and accordingly, the agreement had expired before any tenant had been identified. In so holding, the trial court cited *Skiff re Business, Inc. v. Buckingham Ridgeview, L.P.,* 991 A.2d 956, 969 (Pa.Super.2010), for the proposition that the primary purpose of RELRA "is to protect buyers and sellers of real estate, the most expensive item many persons ever buy or sell, from abuse by persons

engaged in the business." Trial Court Opinion, 8/5/10, at 2. The requirement that such agreements be in writing, the court noted, not only clarified the obligations of the parties, but also protected them from "after-the-fact controversy." *Id.* (citing *Pollock v. Pittsburgh Opera*, 137 P.L.J. 391, 393 (Allegheny Co.2009)), *affirmed mem.*, 4 A.3d 682 (Pa.Super.2010).

MSC contends that prior to the expiration of the agreement, the parties orally agreed to extend the written agreement indefinitely. Since the agreement, as orally extended, was in effect when Summit Sports was identified as a prospective tenant, MSC asserts that it is entitled to a commission as the exclusive listing broker. MSC relies upon well-settled law that a written agreement may be modified by subsequent oral agreement, even when the written contract provides that modifications may only be made in writing. *Universal Builders, Inc. v. Moon Motor Lodge, Inc.*, 430 Pa. 550, 244 A.2d 10 (1968). As the agreement did not require modifications to be made in writing, MSC contends that the parties were free to orally extend the term of the agreement. According to MSC, "the RELRA only requires that the material terms of the parties' contract be in writing." Appellant's brief at 11.

■ We agree with MSC that RELRA requires the material terms of the parties' contract be in writing. For the reasons that follow, we find that the duration of the agreement is a material term that must be in writing. Since the agreement as orally modified fails to contain a written duration term, it does not comply with the statute and MSC's claim to a brokerage fee or commission is barred.

At issue herein is the statutory construction of RELRA. As in matters of statutory construction generally, our duty is to ascertain and effectuate the legislative in-

tent. *Commonwealth v. Shiffler*, 583 Pa. 478, 879 A.2d 185, 189–190 (2005); 1 Pa. C.S. §§ 1921–1922. RELRA was amended in 1998, effective in 1999, to provide that brokerage agreements must be in writing. The Act provides in 63 P.S. § 455.606a(b) that:

(1) A licensee may not perform a service for a consumer of real estate services for a fee, commission or other valuable consideration paid by or on behalf of the consumer unless the nature of the service and the fee to be charged are set forth in a written agreement between the broker and the consumer that is signed by the consumer. This paragraph shall not prohibit a licensee from performing services before such an agreement is signed, but the licensee is not entitled to recover a fee, commission or other valuable consideration in the absence of such a signed agreement.

(2) Notwithstanding paragraph (1), an open listing agreement or a nonexclusive agreement for a licensee to act as a buyer/tenant agent may be oral if the seller or buyer is provided with a written memorandum stating the terms of the agreement.

63 P.S. § 455.606a(b). The Act further describes in 63 P.S. § 455.608a what the written brokerage contract must contain:

An agreement between a broker and a principal, or any agreement between a broker and a consumer whereby the consumer is or may be committed to pay a fee, commission or other valuable consideration, that is required to be in writing by section 606.1, shall be signed by the consumer and shall identify the services to be provided and the fee to be paid, if any. The agreement shall also contain the following information which shall be disclosed in the manner and method the commission shall establish by regulation:

(1) A statement that the broker's fee and the duration of the contract have been determined as a result of negotiations between the broker and the seller/landlord or buyer/tenant.

63 P.S. § 455.608a. Regulations promulgated pursuant to the legislation, specifically, 49 Pa.Code § 35.281, provides that all such agreements "shall be in writing and contain the information specified in [49 Pa. Code] § 35.331[,]" which provides in pertinent part:

(a)(3) Notification that the broker's commission and the duration of the agreement have been determined as a result of negotiations between the broker, or a licensee employed by the broker, and the seller/landlord or buyer/tenant."

49 Pa.Code § 35.331(a)(3). Exclusive listing agreements, the type of agreement involved herein, which entitle the listing broker to a commission even if he does not procure the eventual buyer, are governed by 49 Pa.Code § 35.332, which provides that exclusive listing contracts "shall contain, in addition to the requirements in § 35.31 ... (3) the duration of the agreement."

■ Drawing all reasonable inferences from the record in the light most favorable to MSC, as we are required to do, and assuming that there was an oral extension of the agreement, Michael Salove readily admitted that there was no agreement in writing (or orally) as to the duration of the extended agreement. Thus, the oral extension of the written agreement does not comply with the Act and MSC's claim to a commission under RELRA is barred. We find additional support for our position in RELRA, 63 P.S. § 455.604(a), which lists the failure to specify a definite termination date in any listing contract under the prohibited acts for which a broker can be suspended or have his license revoked. *See* 63 P.S. § 455.604(a)(10).

■ We decline to hold that RELRA precludes any oral modification of a written exclusive listing agreement. Rather, we hold that an oral modification of a term of such an agreement, which is required under the Act to be in writing, cannot support a claim for commissions or fees under RELRA.

We turn now to Landlord's cross-appeal alleging that the trial court erred in refusing to award it attorneys' fees and costs as the prevailing party in the broker's lien. Landlord filed a petition for removal of MSC's broker's lien and a hearing was held on the petition. Thereafter, MSC filed a praecipe to dismiss its own broker's lien. Accordingly, the trial court dismissed Landlord's petition for removal of lien as moot, and on July 29, 2009, the court entered a consent order striking the broker's lien and ordering that it be marked stricken in the judgment index.

On October 21, 2009, Landlord filed a petition for costs and attorneys' fees incurred in securing removal of the improperly filed lien, renewing the request for relief it had sought in its petition to strike the broker's lien filed on February 20, 2009. MSC opposed, and by order dated December 3, 2009, the court denied the petition.

Commercial broker's liens are governed by the Commercial Real Estate Brokers Lien Act (CREBLA), 68 P.S. § 1051 *et seq.* The recovery of costs, which includes attorneys' fees, is governed by 68 P.S. § 1058(h):

1058(h) COSTS.—The cost of proceedings, including reasonable attorney fees and prejudgment interest due to the prevailing party, shall be borne by the nonprevailing party or parties. If more than one party is responsible for the

costs, fees and prejudgment interest, the costs, fees and prejudgment interest shall be equitably apportioned by the court among the responsible parties.

68 P.S. § 1058(h).

Landlord asserts that the trial court erred in denying it attorneys' fees as it was the prevailing party in the broker's lien action. Additionally, Landlord claims entitlement to attorneys' fees because MSC acted in bad faith in refusing to remove the lien. MSC counters that there was no adjudication, and hence there was no prevailing party, for purposes of the attorneys' fee provision.

The issue is whether MSC is the non-prevailing party as that term is used in the statute. We note there is a dearth of authority construing this provision of the Commercial Real Estate Broker's Lien Act. Landlord directs our attention to *Re/Max Select Realty v. DeAugustino*, 73 Pa. D. & C. 4th 371, 380 (Mercer Co.2005), for the proposition that where a broker's lien is stricken, the party filing the lien must be considered the "non-prevailing party" for purposes of 68 Pa.S.A. § 1058(h). In *Re/Max*, the court held that plaintiffs were responsible for costs and attorneys' fees, but found the invoice submitted by defendants to be unsubstantiated, leaving the court with no basis for determining the reasonableness of the charges. Hence, the

court denied defendant's petition because of an inadequate record.

 While we are not bound by the aforementioned decision, we agree that the striking of the lien makes MSC the "non-prevailing party" for purposes of CREB-LA. It matters not whether MSC voluntarily initiated dismissal of the lien or whether the lien was stricken pursuant to Landlord's petition to strike. By court order of July 31, 2009, the lien was stricken. Given the mandatory language of § 1058(h) of CREBLA, we hold that the trial court erred in refusing to award Landlord reasonable attorneys' fees, prejudgment interest, and costs incurred in securing removal of the lien.

For all of the foregoing reasons, we affirm the granting of summary judgment. We reverse the denial of reasonable attorneys' fees, costs and interest associated with the defense of the broker's lien and remand for such a determination.

Order granting summary judgment affirmed. Order denying attorneys' fees reversed. Case remanded. Jurisdiction relinquished.