J-A08018-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| RODDY, INC. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PROLOGIS NA3 PA II, LP, PROLOGIS | : | No. 1477 EDA 2025 |
| NA3 PA II GP, LLC, PROLOGIS NA3 | : | |
| PA II, LLC, PROLOGIS, INC., | : | |
| DERMODY PROPERTIES, DP | : | |
| OPERATING PARTNERSHIP, L.P., DP | : | |
| INDUSTRIAL, LLC, JOHN DO, | : | |
| PERSON, CORPORATIONS, LLC, | : | |
| LIMITED LIABILITY COMPANIES, | : | |
| PARTNERSHIPS, GENERAL | : | |
| PARTNERSHIPS AND ALL OTHER | : | |
| ENTITIES HAVING LIABILITY | : | |
| HEREUNDER | : | |

Appeal from the Order Entered June 3, 2025
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 210401333

BEFORE:   LAZARUS, P.J., PANELLA, P.J.E., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED MAY 19, 2026**

Appellant, Roddy, Inc., appeals the order entered in the Court of Common Pleas of Philadelphia County on November 12, 2024, granting summary judgment in favor of Appellees, Prologis NA3 PA II, LP, Prologis NA3 PA II GP, LLC, Prologis NA3 PA II, LLC, Prologis, Inc. and DP Operating

_____

[*] Former Justice specially assigned to the Superior Court.

Partnership, L.P., and DP Industrial, LLC.[1] After a careful review, we affirm and adopt the trial court's November 12, 2024, opinion as our own.

The trial court accurately and thoroughly set forth the relevant facts and procedural history of this case. Therefore, we have no reason to restate them at length. Briefly, Appellant is a licensed real estate broker. In 2001, Appellant arranged a lease between an entity called DP Operating Partnership, L.P. and UPS e-Logistics, Inc. at 401 Blue Mountain Park Drive in Harrisburg, Pennsylvania. DP and Appellant entered into an agreement (hereinafter, "the Commission Agreement") for Appellant to earn commission for that lease, and other certain renewals and sales that may stem from the relationship between DP and UPS. In 2007, Appellee, Prologis NA3 PA II, LP, purchased the premises from DP. The lease between DP and UPS and the Commission Agreement between DP and Appellant were assigned to Prologis.

Appellant initially received commission under the 2001 agreement and thereafter earned commission on subsequent renewals. Following a lease termination and the entry of a new lease between Prologis Appellees and a UPS entity, Appellant sought commission under the original agreement. Prologis Appellees declined to pay Appellant any commission. Appellant filed

---

[1] Appellees, Dermody Properties, and Appellant entered into a stipulation in which they agreed to the entry of summary judgment on Appellant's claims against Dermody on the basis of the November 12, 2024, trial court opinion. The stipulation was entered by order on June 3, 2025

a complaint seeking the payment of commission on July 22, 2021.[2] Following the filing of answers, preliminary objections, crossclaims, motions for summary judgment, and motions for reconsideration, the trial court ultimately entered summary judgment in favor of Appellee Prologis on November 12, 2024. This appeal follows.

Appellant raises these eight issues, verbatim, for our review:

A. Whether the Trial Court Erred and Abused its Discretion in Granting Summary Judgment in Favor of Defendants/Appellees Prologis NA3 II, LP, Prologis NA3 II GP, LLC, Prologis NA3 II, LLC ("Prologis") and Defendant Dermody Properties, DP Operating Partnership, LP and DP Industrial, LLC ("Dermody") and Against Plaintiff Roddy Inc. ("Roddy") Based on the Record in this Case?

B. Whether the Trial Court Erred and Abused its Discretion in Finding That the Pennsylvania Real Estate Licensing and Registration Act, 63 P.S. Section 455.101, et seq. (the "RELRA") Precluded Enforcement of the April 2001 Agreement (the "Commission Agreement") Between Roddy and DP Operating Partnership, LP Against the Defendants/Appellees Because the April 2001 Commission Agreement Allegedly Failed to Comply with the Requirements of the RELRA and Therefore was "Void *Ab Initio*"?

C. Whether the Trial Court Erred in Finding That the Commission Agreement was an Exclusive Listing Agreement and Therefore Subject to the Requirements of Section 606a(b)(1) of the RELRA, 63 P.S. Section 455.606a(b)(1), 49 Pa. Code Section 35.281a and 49 Pa. Code Section 35.331, Relating to Written Contracts Between a Broker and Principal, Where the Commission Agreement was not an Exclusive Listing Agreement but was Instead an Open Listing Agreement for the Lease of the Subject Property, and Therefore Subject to the Exception of Those Requirements Contained in Section 455.606a(b)(2) of the RELRA,

_____

[2] Appellant's third amended complaint, the operative complaint in this matter, was filed on July 22, 2021.

63 P.S. 606a (b)(2), Which Allows for an Oral Agreement Confirmed by a Written Memorandum?

D. Whether the Trial Court Erred in Finding that the Commission Agreement was Deficient Pursuant to the RELRA and Therefore Unenforceable Where, in Fact, the Commission Agreement Met the Requirements of a "Written Memorandum" Pursuant to 63 P.S. Section 455.606a(b)(2)?

E. Whether the Trial Court Erred and Abused its Discretion in Holding that the Commission Agreement was Void and Unenforceable Pursuant to the Terms of the RELRA Where the Commission Agreement, in Fact, Contained All Provisions Required by the RELRA?

F. Whether the Trial Court Erred and Abused its Discretion in Holding That the Commission Agreement was Deficient Because it Did Not Contain a Specific "Duration" Where the Commission Agreement Provided for Payment of Commission by Defendant Appellees so Long as the Tenant Introduced by Roddy Continued to Lease Premises from Defendants/Appellees?

G. Whether the Trial Court Erred and Abused its Discretion by Failing to Find that Defendant/Appellee Prologis Waived Any Objection to the Commission Agreement and to Payment of Commissions to Roddy by Accepting and Assuming the Duties of Dermody Under the Commission Agreement, in Writing, and by Repeatedly Paying Commissions Upon Previous Renewals of the Lease?

H. Whether the Trial Court Erred in Holding that Appellant Roddy is not Entitled to Recover Against Prologis Under the Doctrine of Unjust Enrichment?

Appellant's Br. at 6-9.

We begin with our standard of review. "This Court's standard of review

of a grant of summary judgment is *de novo*, and our scope of review is plenary.

We apply the same standard for summary judgment as the trial court." ***Gior***

***G.P., Inc. v. Waterfront Square Reef, LLC***, 202 A.3d 845, 852 n.10 (Pa.

Cmwlth. 2019) (citing **Cochrane v. Kopko**, 975 A.2d 1203, 1205 (Pa. Cmwlth. 2009)). "A grant of summary judgment is only appropriate where the record clearly shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." **Id.** (citing **Farabaugh v. Pennsylvania Turnpike Commission**, 911 A.2d 1264, 1267 n.3 (Pa. 2006)).

Following our review of the record, the parties' briefs and reply briefs, the relevant law, and the trial court's well-reasoned analysis, we affirm on the basis of the trial court's opinion and the supplemental analysis herein. Specifically, we find that the trial court did not err in granting summary judgment as there are no material facts in dispute and the Appellees are entitled to judgment as a matter of law. We find that the written agreement at issue was void for failure to comply with the Pennsylvania Real Estate Licensing and Registration Act ("RELRA"), and that it was an "exclusive listing agreement" subject to the Pennsylvania Code provisions relating to written contacts between a broker and principal/consumer and exclusive listing agreements. We decline to determine if the written agreement meets the requirements for a "written memorandum" under RELRA because we agree that the exception allowing for a less-strict writing memorializing the agreement does not apply. Our review of the agreement in the certified record and the transcripts of depositions confirms that the agreement is missing material terms. Finally, we agree with the trial court and Appellees that

Appellants cannot recover under the theory of unjust enrichment because resorting to equitable remedies would defeat the purpose of the statute.

There is no dispute that Appellant is a broker and licensee earning commission. Appellant's Br. at 38; Tr. Ct. Op. at 8. As such, Appellant is subject to the following RELRA provision:

> (1) A ***licensee may not perform a service for a consumer of real estate services for a fee, commission*** or other valuable consideration paid by or on behalf of the consumer ***unless the nature of the service and the fee to be charged are set forth in a written agreement between the broker and the consumer that is signed by the consumer. This paragraph shall not prohibit a licensee from performing services before such an agreement is signed, but the licensee is not entitled to recover a fee, commission or other valuable consideration in the absence of such a signed agreement.***
>
> (2) Notwithstanding paragraph (1), an open listing agreement or a nonexclusive agreement for a licensee to act as a buyer/tenant agent may be oral if the seller or buyer is provided with a written memorandum stating the terms of the agreement.

63 P.S. § 455.606a(b)(1)-(2) (emphasis added).

Appellant contends that the Commission Agreement falls into the exception in subsection (2), *i.e.*, that Appellant acted as a nonexclusive tenant agent, and thus, the agreement merely needs to—and does—satisfy the requirements of a "written memorandum." Appellant's Br. at 35, 39-42. However, the trial court classified the Commission Agreement as an "exclusive listing agreement" subject to subsection (1) above and stricter written requirements.

We agree with the trial court and with Appellees that the Commission Agreement falls under 63 P.S. § 455.606a(b)(1) above, requiring a full written disclosure, and not the exception in subsection (2) as Appellant claims, requiring only a "written memorandum stating the terms of the agreement." The Commission Agreement at issue is an agreement by which the consumer may need to pay a commission to the broker. Accordingly, the agreement does not create a broker-tenant[3] relationship as contemplated in the exception in subsection (2), but it calls for the payment of commission as contemplated in subsection (1). R.R. 138a.

Given that the Commission Agreement is not a "nonexclusive agreement for a licensee to act as a buyer/tenant agent" and instead is an agreement which calls for the payment of commission, we concur that the agreement is one comprising of the exclusive agency of Appellant as the broker as to the specific tenant, UPS. Appellant admits in its brief, "the commission stated in the Commission Agreement is payable to Roddy for work that Roddy had already performed, in introducing the tenant to the property owner." Appellant's Br. at 44. It also admits that the agreement does not entitle it to a commission if the property "is leased to others" besides the tenant, UPS. *Id*. To the extent that the Commission Agreement can be described as a "listing

---

[3] The tenant in this instance is UPS e-Logistics, Inc. An agreement between Appellant as broker and UPS as tenant may very well be subject to the exception in subsection (2). However, the tenant UPS is not a contractual party to the Commission Agreement at issue.

agreement" at all, it cannot accurately be legally described as an "open listing agreement" as Appellant argues when the agreement contemplates Appellant as the only broker entitled to compensation for the lease of the relevant property to the specified tenant.

We agree with the trial court that the Commission Agreement is also subject to the provisions in 63 P.S. § 455.608a (describing the requirements of a written agreement with broker), and 49 Pa. Code § 35.331 (describing the requirements of written agreements generally between a broker and a principal/consumer). The statute is as follows:

> An agreement between a broker and a principal, or any agreement between a broker and a consumer whereby the consumer is or may be committed to pay a fee, commission or other valuable consideration, that is required to be in writing by section 606.1[4], shall be signed by the consumer and shall identify the services to be provided and the fee to be paid, if any. The agreement shall also contain the following information which shall be disclosed in the manner and method the commission shall establish by regulation:
>
> (1) A statement that the broker's fee and the duration of the contract have been determined as a result of negotiations between the broker and the seller/landlord or buyer/tenant.
>
> (2) A statement describing the nature and extent of the broker's services to be provided to the seller/landlord or buyer/tenant and the fees that will be charged.
>
> (3) A statement identifying any possibility that the broker, or any licensee employed by the broker, may provide services to more than one consumer in a single transaction and if so, an explanation of the duties that may be owed the

_____

[4] There is no 63 P.S. § 455.606.1 and it does not appear that there ever was in prior amendments.

other party and whether the broker may accept a fee for those services.

(4) In an agreement between a broker and seller, a statement of the broker's policies regarding cooperation with subagents and buyer agents, a disclosure that a buyer agent, even if compensated by the broker or seller will represent the interests of the buyer and a disclosure of any potential for the broker to act as a disclosed dual agent.

(5) In an agreement between a broker and a buyer, a statement identifying any possibility that the broker's compensation may be based upon a percentage of the purchase price, a disclosure of the broker's policies regarding cooperation with listing brokers willing to pay buyer's brokers, a disclosure that the broker, even if compensated by the listing broker or seller, will represent the interests of the buyer and disclosure of any potential for the buyer broker to act as a disclosed dual agent.

(6) A statement describing the purpose of the Real Estate Recovery Fund established under section 801 and the telephone number of the commission at which the seller can receive further information about the fund.

(7) A statement regarding any possible conflicts of interest and informing the consumer of the licensee's continuing duty to timely disclose any conflicts of interest.

63 P.S. § 455.608a. Additionally, the Pennsylvania Code states,

(a) A written agreement between a broker and a principal or between a broker and a consumer whereby the consumer is or may be committed to pay a fee, commission or other valuable consideration shall contain the following:

(1) Notification that a Real Estate Recovery Fund exists to reimburse a person who has obtained a final civil judgment against a Commonwealth real estate licensee owing to fraud, misrepresentation or deceit in a real estate transaction and who has been unable to collect the judgment after exhausting legal and equitable remedies. Details about the Fund may be obtained by calling the Commission at (717) 783-3658.

(2) Notification that payments of money received by the broker on account of a sale—regardless of the form of payment and the person designated as payee (if payment is made by an instrument)—shall be held by the broker in an escrow account pending consummation of the sale or a prior termination thereof.

(3) Notification that the broker's commission and the duration of the agreement have been determined as a result of negotiations between the broker, or a licensee employed by the broker, and the seller/landlord or buyer/tenant.

(4) A description of the services to be provided and the fees to be charged.

(5) Notification about the possibility that the broker or any licensee employed by the broker may provide services to more than one party in a single transaction, and an explanation of the duties owed to the other party and the fees which the broker may receive for those services.

(6) Notification of the licensee's continuing duty to disclose in a reasonably practicable period of time any conflict of interest.

(7) In an agreement between a broker and a seller/landlord, a statement regarding cooperation with subagents and buyers agents, a disclosure that a buyer agent, even if compensated by the listing broker or seller/landlord will represent the interests of the buyer/tenant and a disclosure of any potential for the broker to act as a dual agent.

49 Pa. Code § 35.331.

The Commission Agreement at issue lacks a number of the above requirements. The trial court points out that the notification of the Real Estate Recovery Fund is missing from the agreement. Tr. Ct. Op. at 14. Additionally, our review of the agreement reveals that it does not refer to negotiations about duration, make any disclosures about conflicts of interest, or state the

possibility that Appellant may represent other interests or act as a dual agent. As the trial court states in its opinion, "When the RELRA requires a term to be in writing and the agreement does not contain it, the agreement cannot support a claim for commissions or fees under the RELRA." Tr. Ct. Op. at 11 (citing **Michael Salove Co. v. Enrico Ptnrs., L.P.**, 23 A.3d 1066, 1071 (Pa. Super. 2011)). Thus, the trial court did not err in concluding that the agreement is unenforceable as it is void *ab initio*.[5]

Accordingly, we affirm based on the above and on the trial court's opinion.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/19/2026

---

[5] We do agree with Appellant that, had the agreement been valid, Prologis would have been bound by its terms. The agreement included an assignment and assumption of the Commission Agreement.

- 11 -

# IN THE COURT OF COMMON PLEAS FOR PHILADELPHIA COUNTY
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
## TRIAL DIVISION – CIVIL

RODDY INC., : APRIL TERM, 2021

               Plaintiff, : NO. 01333

           v. : COMMERCE PROGRAM

PROLOGIS NA3 PA II, LP, et al., : 1477 EDA 2025

            Defendants. :

## OPINION

Plaintiff Roddy, Inc. ("Roddy") appeals from this court's summary judgment Order entered on November 12, 2024, and a Stipulated Order entered on June 3, 2025.[1] Copies of the November 12th Order and the accompanying Opinion and the June 3rd Stipulated Order are attached hereto and made a part hereof.

Roddy commenced this action in April of 2021, seeking payment of additional real estate commissions from defendants Prologis NA3 PA II, LP, Prologis NA3 PA II GP, LLC, Prologis NA3 PA II, LLC, and Prologis, Inc. (collectively "Prologis") under a letter agreement executed twenty years earlier in April of 2001 (the "2001 Commission Letter"). The 2001 Commission Letter was entered into between Roddy and defendant D.P. Operating Partners[hip L.P.], which was Prologis' predecessor-in-interest as owner of certain real estate known as 401 Blue Mountain Park Drive (Building #4) in Harrisburg, Pennsylvania (the "Property"). Prologis

---

[1] The November 12th Order was entered by the Honorable Nina Wright Padilla, who is now President Judge of the Court of Common Pleas for Philadelphia County. The June 3rd Stipulated Order was entered by Judge Michael E. Erdos to whom President Judge Wright Padilla's cases were reassigned.

OPFLD-Roddy Inc. Vs Prologis Na3 Pa Ii, Lp Etal [VKS]



21040133300164

apparently made payments to Roddy under the 2001 Commission Letter until April, 2016, when it ceased making such payments.

In this action, Roddy also asserted claims against defendants DP Operating Partnership, L.P., which was the original signatory of the 2001 Commission Letter and the owner of the Property, DP Industrial, LLC, a related affiliate to whom the Property was subsequently transferred and which, in turn, sold the Property to Prologis, and Dermody Properties, the general partner of the DP partnership entity and the parent and principal of the DP LLC (collectively "Dermody").

Prologis moved for summary judgment on all the claims asserted against it, which motions the court granted in its November 12th Order.[2] In its Opinion accompanying the November 12th Order, the court found the 2001 Commission Letter was *void ab initio* because it did not comply with the requirements of the Real Estate and Licensing Registration Act (the "RELRA") and the regulations enacted under the RELRA. Roddy filed an appeal from this decision,[3] which was quashed on January 21, 2025, because the November 12th Order did not dispose of all claims and all parties.

Dermody did not move for summary judgment, so the claims asserted by Roddy against it moved forward to trial. However, the parties recognized that the ruling on Roddy's claims against Prologis was determinative of Roddy's claims against Dermody too. As a result, the parties entered into a Stipulation in which they agreed to the entry of summary judgment on Rodddy's claims against Dermody based on the reasoning set forth in the Opinion accompanying

---

[2] Roddy also moved for summary judgment on its claims, and the court denied that motion in the November 12th Order.

[3] 3274 EDA 2024.

2

the November 12th Order. That Stipulation was approved and entered as an Order of court on June 3, 2025, and this appeal ensued.

For all the reasons set forth in the court's Opinion accompanying the November 12th Order, the court respectfully requests that its decisions be affirmed on appeal.

**Dated: August 28, 2025**

_____
**MICHAEL E. ERDOS, J.**

3

RECEIVED

NOV 1 2 2024

ROOM 521

# IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA CIVIL TRIAL DIVISION

| | | |
|---|---|---|
| **RODDY, INC.,**<br>Plaintiff, | : | APRIL TERM, 2021 **DOCKETED** |
| | : | No. 01333 **NOV 1 2 2024** |
| v. | : | **R. POSTELL** |
| | : | COMMERCE PROGRAM **COMMERCE PROGRAM** |
| **PROLOGIS NA3 PA II, LP.,** *et al.*,<br>Defendants. | : | |
| | : | Control No. 22063506 |
| | : | Control No. 22063517 |
| | : | Control No. 22063548 |
| | : | Control No. 24065017 |

## ORDER

**AND NOW**, this 12th day of November, 2024, upon consideration of Prologis

Defendants' Motion for Summary Judgment on Plaintiff Roddy, Inc.'s claims, Prologis

Defendants' Motion for Summary Judgment on Dermody Defendants' crossclaims, Plaintiff

Roddy, Inc.'s Motion for Summary Judgment on all claims, and Prologis Defendants' Motion for

Reconsideration, and the responses thereto, it is hereby **ORDERED AND DECREED** that:

1. Plaintiff Roddy, Inc.'s Motion for Summary Judgment on all claims, Control No. 22063548, is **DENIED.**

2. Prologis Defendants' Motion for Summary Judgment on all of Plaintiff's claims, Control No. 22063506, is **GRANTED.**

3. Prologis Defendants' Motion for Summary Judgment on all of Dermody Defendants' crossclaims, Control No. 22063517, is **GRANTED.**

4. Prologis Defendants' Motion for Reconsideration, Control No. 24065017, is **DENIED AS MOOT.**

BY THE COURT

NINA W. PADILLA, P.J.

ORDOP-Roddy Inc. Vs Prologis Na3 Po Il, Lp Etal [RCP]

2104013300134

## IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA CIVIL TRIAL DIVISION

| | | |
|---|---|---|
| **RODDY, INC.,**<br>Plaintiff, | : | APRIL TERM, 2021 |
| | : | |
| | : | No. 01333 |
| v. | : | |
| | : | COMMERCE PROGRAM |
| **PROLOGIS NA3 PA II, LP.,** *et al.,* | : | |
| Defendants. | : | Control No. 22063506 |
| | : | Control No. 22063517 |
| | : | Control No. 22063548 |
| | | Control No. 24065017 |

### OPINION

Three Motions for Summary Judgment and a Motion for Reconsideration are before this Court. Plaintiff Roddy Inc., hereinafter "Roddy", seeks Summary Judgment on all claims pleaded in its Third Amended Complaint. Defendants Prologis NA3 PA II, LP, Prologis NA3 PA II GP LLC, and Prologis NA3 PA II LLC, hereinafter "Prologis Defendants", seek Summary Judgment on all of Roddy's claims in its Third Amended Complaint, as well as Summary Judgment on all crossclaims by Cross-Defendants DP Operating Partnership LP, DP Industrial LLC, and Dermody Properties, hereinafter "Dermody Defendants". Additionally, Prologis Defendants' seek Reconsideration of this Court's May 2, 2024 Order denying Reconsideration or Certification for Interlocutory Appeal.

For the following reasons, Prologis Defendants' Motion for Summary Judgment on Roddy's claims is granted, Prologis Defendants' Motion for Summary Judgment on Dermody Defendants crossclaims is granted, and Roddy's Motion for Summary Judgment is denied. Prologis Defendants' Motion for Reconsideration is denied as moot.

Under Pa.R.C.P. 1035.2, a court may grant summary judgment where there is no issue of material fact such that the issue may be resolved as a matter of law.[1] Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment.[2]

Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law.[3] The record must be viewed "in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party."[4]

Viewing the record in the light most favorable to the non-moving party and resolving all doubts against the moving party, this Court grants Prologis Defendants' two Motions for Summary Judgment against Roddy and Dermody Defendants, finding that the Pennsylvania Real Estate Licensing and Registration Act ("the RELRA") precludes enforcement of the April 2001 written agreement ("the Commission Agreement") for failure to include required material terms in writing.

## FACTS

Roddy Inc. is a licensed real estate broker registered in the Commonwealth of Pennsylvania.[5] Roddy earns commission income by representing either a landlord or a tenant, a buyer, or a

---

[1] *Good v. Frankie & Eddie's Hanover Inn, LLP*, 171 A.3d 792, 795 (Pa. Super. 2017); Pa. R.C.P. 1035.2

[2] *ADP, Inc. v. Morrow Motors Inc.*, 969 A.2d 1244, 1246 (Pa. Super. 2009).

[3] *Id.*

[4] *Id.*

[5] Tr. Mot. Summ. J. Hr'g 42:13, February 26, 2024.

-2-

seller, and, pursuant to written agreement, is compensated for facilitating transactions for lease or for sale.[6] In March 2001, Roddy Inc. arranged and prepared a lease between DP Operating Partnership L.P. and UPS e-Logistics relating to a premises at 401 Blue Mountain Park Drive, Harrisburg, PA.[7] At the time of the lease, the property at 401 Blue Mountain Park Drive was owned by DP Operating Partnership, L.P.[8]

On April 6, 2001, DP Operating Partnership L.P. and Roddy Inc. entered into a written agreement setting forth a payment structure under which Roddy would receive compensation for procuring a tenancy for Landlord DP Operating Partnership L.P.[9] The written agreement set forth compensation contingent on any lease renewal or option exercised, lease expansion by lessee, and/or sale to lessee or affiliated entities.[10] The written agreement contained additional provisions concerning assignment by lessee or lessor.[11] The agreement was signed by representatives of DP Operating Partnership L.P. and Roddy. Consistent with the terms of the April 11, 2001 written agreement, Roddy received payment of commission at lease execution from Landlord DP Operating Partnership L.P.[12]

On February 5, 2003, DP Operating Partnership L.P. transferred its right, title, and interest in and to the 401 Blue Mountain Park Drive property and Blue Mountain Logistics park to DP Industrial, L.L.C..[13]

---

[6] Third Am. Compl. at 17.
[7] Third Am. Compl. At 18.
[8] Third Am. Compl. at 19.; Standard Industrial Lease
[9] April 2001 Commission Agreement
[10] *Id.* at 2
[11] *Id.*
[12] Cross Defs.' Brief in Opposition of Prologis' Mot. Summ. J. as to Defs' Crossclaims at 4.
[13] Cross Defs.' Answer to Third Am. Compl. at 33.

On or about January 12, 2006, UPS Global Innovations, Inc., formerly known as UPS e-Logistics, Inc., assigned its rights as Lessee under the lease to its affiliate, UPS Supply Chain Solutions, Inc.[14] The assignment was acknowledged by a lease modification on January 12, 2006 - the first amendment to the lease.[15] The assignment had no effect on payment of commission to Roddy.[16]

On or about July 11, 2007, Prologis NA3 PA II LP purchased the property at 401 Blue Mountain park Drive from DP Industrial L.L.C. for $63,513,918.00.[17] Section 8.2.6 of the Agreement of Purchase and Sale contained an "Assumed Contracts" clause that required buyer's assumption of, among other things, brokerage agreements.[18] On July 9, 2007, DP Industrial L.L.C. entered into a General Assignment pursuant to which Prologis LP assumed performance of all covenants imposed upon DP Industrial L.L.C. under the Assumed Contracts agreement.[19]

The lease was further modified on March 10, 2010, March 31, 2010, and April 19, 2016.[20] Prologis LP and Prologis LLC made payments to Roddy pursuant to the Commission Agreement and Agreement of Purchase and Sale numerous times.[21] The most recent payment by a Prologis Defendant to Roddy pursuant to the agreements occurred in April 2016, where Prologis, LLC paid Roddy a commission following the extension of the lease of the fourth amendment to the lease.[22] Prologis LP made payments on more than one occasion to Roddy, and at the times at

---

[14] Third Am. Compl. at 31.
[15] January 2006 Assignment and Assumption of Lease, Exh C. to Third Am. Compl.
[16] Third Am. Compl. at 31.
[17] *Id.* at 33.
[18] Cross Defs.' Answer to Third Am. Compl. at 33.
[19] Defs.' Answer to Third Am. Compl. at 36.
[20] Defs.' Answer to Third Am. Compl. at 38.
[21] Tr. Mot. Summ. J. Hr'g 19:7-11.
[22] Third Am. Compl. at 38-40.

which Prologis LP made those payments, Prologis LP believed it owed commission payments to Roddy.[23]

Prior to the expiration of the lease's extended term, on or about November 12, 2018, Prologis Defendants terminated the 401 Blue Mountain Park Drive lease and executed a new lease with UPS Supply Chain Solutions, Inc. as tenant.[24] A separate lease concerning property in the Blue Mountain Logistics Park was also executed with UPS Supply Chain Solutions, Inc. as tenant.[25] Prologis Defendants did not make any payments to Roddy following the creation of the new 2018 leases.[26] Roddy thereafter started this litigation seeking payments allegedly owed by Prologis Defendants stemming from the April 2001 Commission Agreement and the Agreement for Sale and Purchase.

## PROCEDURAL HISTORY

On July 22, 2021, Roddy filed the operative Third Amended Complaint. On July 27, 2021 Prologis Defendants filed Preliminary Objections to the Third Amended Complaint.

On November 24, 2021, Dermody Defendants filed an Answer to the Third Amended Complaint, asserting Crossclaims against Prologis Defendants.

On December 30, 2021, this Court sustained in part Prologis Defendants' Preliminary Objections, dismissing all claims against one of the Prologis Defendants, Prologis, Inc.. On January 14, 2022, the remaining Prologis Defendants filed an Answer to the Third Amended Complaint.

---

[23] Defs.' Reply to Cross-cl. at 91; Tr. Mot. Summ. J. Hr'g 19:7-9.
[24] Third Am. Compl. At 41.
[25] Third Am. Compl. At 41.
[26] Tr. Mot. Summ. J. Hr'g 11:14-21.

On June 17, 2022, Roddy filed a Motion for Summary Judgment seeking relief in law and equity. On June 17, 2022, Prologis Defendants filed two Motions for Summary Judgment seeking dismissal of all claims by Roddy and Dermody Defendants.

On June 27, 2023, this Court denied all three Motions for Summary Judgment.

On July 6, 2023, Roddy filed a Motion for Reconsideration of this Court's June 27, 2023 Order denying the three Motions for Summary Judgment. On July 18, 2023, Prologis Defendants filed a Motion for Reconsideration or Certification of this Court's June 27, 2023 Order denying the three Motions for Summary Judgment.

On August 11, 2023, this Court granted in part Roddy's Motion for Reconsideration. This Court vacated the June 27, 2023 Order denying the three Motions for Summary Judgment, and granted Roddy leave to file additional exhibits under seal. On May 2, 2024, this Court denied Prologis Defendants' Motion for Reconsideration or Certification.

On June 25, 2024, Prologis Defendants filed a Motion for Reconsideration of this Court's May 2, 2024 Order denying Prologis Defendants' Motion for Reconsideration or Certification.

## DISCUSSION

**I.      Prologis Defendants' Motion for Summary Judgment on all claims by Roddy is granted.**

Prologis Defendants' first Motion for Summary Judgment dated June 17, 2022 seeks judgment on all of Roddy's claims asserted in the Third Amended Complaint: (1) breach of contract; (2) third party beneficiary; (3) anticipatory breach/declaratory judgment; and (4) unjust enrichment. Drawing all reasonable inferences from the record in the light most favorable to

Roddy Inc., this Court finds that the April 2001 Commission Agreement entered into between Roddy Inc. and DP Operating Partnership was invalid *ab initio* for failing to comply with the written requirements of the RELRA. As such, the agreement cannot form a basis of Roddy's or Dermody Defendants' claims against Prologis Defendants. Accordingly, Prologis Defendants' Motion for Summary Judgment on all of Roddy's claims is granted.

**A. Count I: Breach of Contract**

Prologis Defendants argue that the Commission Agreement was invalid *ab initio* for failure to comply with RELRA, and as such cannot be used to enforce commissions on Prologis. Prologis Defendants argue that the commission agreement does not include numerous RELRA mandatory disclosures, including the duration requirement.

**i.      The April 2001 Commission Agreement is governed by the Pennsylvania Real Estate and Licensing Registration Act.**

To successfully maintain a cause of action for breach of contract the plaintiff must establish: (1) the existence of a contract, including its essential terms, (2) a breach of duty imposed by contract, and (3) resultant damages.[27] Generally, an agreement is an enforceable contract wherein the parties intended to conclude a binding agreement and the essential terms of that agreement are certain enough to provide the basis for providing an appropriate remedy.[28]

The RELRA establishes specific standards of conduct and licensing which pertain to persons engaged in the sale or transfer of real property in Pennsylvania. Among those persons are real estate brokers and consumers of real estate brokerage services.[29] Under the RELRA, a broker is

---

[27] *Albert v. Erie Ins. Exch.*, 65 A.3d 923, 928 (Pa. Super. 2013).
[28] *Com. Realty Grp., Inc. v. Mkt. Square Plaza Assocs., LP*, 262 A.3d 553 (Pa. Super. Ct. 2021)
[29] 63 P.S. § 455.201

any person who, for a fee, commission, or other valuable consideration, negotiates with or aids any person in locating or obtaining for purchase, lease, or an acquisition in any real estate.[30] A consumer is a person who is the recipient of any real estate service.[31]

Roddy is a real estate broker.[32] Roddy earns commission income by representing either a landlord or a tenant, a buyer, or a seller, and, pursuant to written agreement, is compensated for facilitating transactions for lease or for sale.[33] In this case, Roddy, as agent for tenant UPS e-Logistics Inc., helped arrange and prepare the March 22, 2001 lease between landlord DP Operating Partnership, L.P., and UPS e-Logistics, Inc..[34] The lease regarding a building and lot at 401 Blue Mountain Park Drive, Harrisburg, Pennsylvania 17112 gave UPS e-Logistics, Inc. one five year term lease with three consecutive five-year renewal options.[35]

DP Operating Partnership, L.P. and Roddy executed the Commission Agreement, outlining a commission/fee arrangement "in consideration of the services of Roddy Inc. ("tenant broker") in procuring the tenancy created under the subject lease . . ." The agreement between DP Operating Partnership, L.P. and Roddy memorialized Roddy's provision of real estate broker services to DP Operating Partnership, L.P. as consumer. As such, the RELRA governs the validity of the Commission Agreement and the legal duties arising thereof.

---

[30] *Id.*
[31] *Id.*
[32] Tr. Mot. Summ. J. Hr'g 6:20-21; Roddy Dep. 32:18
[33] Third Am. Compl. at 17.
[34] *Id.*
[35] 401 Lease Agreement.

### ii. The April 2001 Commission Agreement does not include material terms in writing as mandated by the RELRA and is therefore invalid.

The RELRA provides that a real estate broker:

"may not perform a service for a consumer of real estate services for a fee, commission or other valuable consideration paid by or on behalf of the consumer unless the nature of the service and the fee to be charged are set forth in a written agreement between the broker and the consumer that is signed by the consumer."

63 P.S. § 455.606(b)(1).

By modifying the common law of contracts, which normally allow for implied-in-fact contracts and for oral contracts, the General Assembly placed a heightened burden on real estate brokers to document their arrangements in writing.[36] The General Assembly adopted the RELRA in part to reduce after-the-fact commission disputes by having written agreements that would clarify the parties' obligations.[37]

An agreement between a broker and a principal, or any agreement between a broker and a consumer whereby the consumer is or may be committed to pay a fee, commission or other valuable consideration, that is required to be in writing by section 606.1, shall be signed by the consumer and shall identify the services to be provided and the fee to be paid, if any.

63 P.S. § 455.608a.

---

[36] *Domino v. Downer,* No. 06-2474, 2007 EL 210824, *6 (E.D. Pa. 2007).
[37] *Michael Salove Co. v. Enrico Partners, L.P.,* 23 A.3d 1066, 1070 (Pa. Super. 2011).

Relevant regulations promulgated by the Pennsylvania Real Estate Commission pursuant to the RELRA govern written agreements generally:

(a) A written agreement between a broker and a principal or between a broker and a consumer whereby the consumer is or may be committed to pay a fee, commission or other valuable consideration shall contain the following:

(1) Notification that a Real Estate Recovery Fund exists to reimburse a person who has obtained a final civil judgment against a Commonwealth real estate licensee owing to fraud, misrepresentation or deceit in a real estate transaction and who has been unable to collect the judgment after exhausting legal and equitable remedies. (4) A description of the services to be provided and the fees to be charged.

49 Pa. Code § 35.331.

Regarding exclusive listing agreements under the RELRA, the regulations further provide:

(b) An exclusive listing agreement shall contain, in addition to the requirements in § 35.331 (relating to written agreements generally), the following:

(3) The duration of the agreement.

49 Pa. Code § 35.332.

Pennsylvania Courts have the duty to ascertain and effectuate the legislative intent of the General Assembly in matters of statutory construction generally.[38] Accordingly, the Superior Court has held that under RELRA, a writing with material terms must exist to support a claim for commissions or fees.[39] Regarding exclusive listing agreements, a duration term is a material term, wherein failure to include such a term precludes a broker's entitlement to fees.[40] When the RELRA requires a term to be in writing and the agreement does not contain it, the agreement cannot support a claim for commissions or fees under the RELRA.[41]

In *Roddy, Inc v. Thackray Crane Rental, Inc.*, it was held that a significant violation of the RELRA could constitute a defense to a brokerage commission claim.[42] In that case over 20 years ago, Roddy sought brokerage commissions based on a course of dealing and long-standing oral agreement which was not reduced to a specific writing.[43] Judge Albert Sheppard determined that Roddy could not recover its broker fees in the absence of an agreement in writing, granting defendant's preliminary objections and dismissing the complaint.[44]

Pennsylvania Courts have held that material breaches can lead to a broker's forfeiture of entitlement to commission.[45] Federal Courts have interpreted the RELRA similarly, finding that mandated disclosures and material terms are a prerequisite for a brokerage commission.[46]

---

[38] *Commonwealth v. Shiffler*, 879 A.2d 185, 189-190 (2005).
[39] *Michael Salove Co.*, 23 A.3d at 1070.
[40] *Id.*
[41] *Id.* at 1071.
[42] *Roddy, Inc. v. Thackray Crane Rental Inc.*, 2001 WL 1807953 (Phila. Co. 2001)
[43] *Id.* at 4.
[44] *Id.*
[45] *Skiff're Business, Inc. v. Buckingham Ridgeview. LP*, 991 A.2d 956, 971 (Pa. Super. 2010).
[46] *Flynn Company v. Eastern Metal Recycling – Terminal, LLC*, 2020 WL 5909533 (E.D. Pa. 2020).

-11-

The Commission Agreement does not include notification of the Real Estate Recovery Fund as mandated by § 35.331. As such, the Commission Agreement does not contain a required term mandated by RELRA and is invalid *ab initio*. The Commission Agreement cannot be enforced on Dermody Defendants, nor can it be enforced via assignment on Prologis Defendants.

Additionally, the Commission Agreement entered into between broker Roddy Inc. and landlord DP Operating Partnership L.P. is an exclusive listing agreement. An exclusive listing agreement may comprise of the exclusive agency of the broker, or the exclusive right to sell or lease.[47] The Commission Agreement states that commissions will be paid on lease execution, renewal, sale to lessee or lessee's affiliated entities, assignment by lessor, or purchase by assignee tenant.[48] Roddy has stated that commissions would be owed as long as the landlord is collecting rent.[49] No matter who negotiates lease renewals or sale of the subject properties to lessee or affiliates of the lessee, Roddy is entitled to commission. Such an agreement is an exclusive listing agreement.

The Commission Agreement's terms do not provide a written duration term as required by the RELRA regarding exclusive listing agreements. Roddy's Designated Corporate Representative Frank Roddy's statements suggest the agreement is perpetual, having stated that, hypothetically, Roddy Inc. would be due a commission in 2050.[50] The Commission Agreement is therefore unenforceable on a consumer.

Roddy argues that the Commission Agreement between Roddy and DP Operating Partnership, L.P. is a "tenant rep agreement" rather than an exclusive listing agreement, and as

---

[47] 49 Pa. Code § 35.332
[48] April 2001 Commission Agreement
[49] Roddy Dep. 118:7-10
[50] Roddy Dep. 121:20

-12-

such enforceability of the Commission Letter "only requires a written memorandum."[51] Roddy contends that its obligations are governed by 63 P.S. 455.606a(b)(2), and that those obligations are satisfied by the Commission Agreement.

The exception provides:

> An open listing agreement or a nonexclusive agreement for a licensee to act as a buyer/tenant agent may be oral if the seller or buyer is provided with a written memorandum stating the terms of the agreement.

> 63 P.S. § 455.606a(b)(2).

The Commission Letter is an agreement between Broker Roddy Inc. and Landlord DP Operating Partnership, L.P. for payment of commissions as compensation for Roddy in providing services to DP Operating Partnership, L.P. in procurement of a tenant for the 401 Blue Mountain Park Drive Property. The relationship created by the agreement is an exclusive listing agreement – Roddy is entitled to payment from lessor DP Operating Partnership L.P. on subsequent fee triggers regardless if Roddy has been recognized as the procuring broker.[52] It is not an agreement authorizing Roddy to act as a "buyer/tenant agent" for DP Operating Partnership L.P.. within the meaning of § 455.606a(b)(2). As such, Roddy does not fall into the open listing exception of § 455.606a(b)(2).

Additionally, if the agreement was in fact an open listing agreement that merely requires a written memorandum, it should have said so – § 35.331, applying to written agreements generally, requires a description of the services provided. Roddy cannot rely on 455.606a(b)(2)

---

[51] Tr. Mot. Summ. J. Hr'g 60:18-25
[52] April 2001 Commission Agreement p.2

-13-

to escape RELRA's requirements. Where no written agreement specifies the term, a party may not later claim that the arrangement falls under the open listing exception pursuant to 63 P.S. 455.606a(b)(2).[53]

Accordingly, Prologis Defendants' Motion for Summary Judgment on Roddy's breach of contract claim is granted.

### B. Count II: Third-Party Beneficiary

Roddy's claim under third party beneficiary theory is predicated on the Commission Agreement being enforceable.

An intended third-party beneficiary is allowed standing to enforce the terms of an agreement between other parties.[54] However, as demonstrated *supra*, the Commission Letter does not comply with the RELRA's written agreement requirements governing conduct between registered brokers and consumers. This court cannot allow Roddy to enforce the terms of an agreement as a third-party beneficiary where the principal agreement is invalid *ab intio*. A third-party cannot be an intended beneficiary where there is no underlying valid contract.

Accordingly, Prologis Defendants' Motion for Summary Judgment on Roddy's third-party beneficiary claim is granted.

### C. Count III: Declaratory Judgment/Anticipatory Breach

Prologis Defendants seek Summary Judgment on Roddy's claims for Count III: declaratory judgment/anticipatory breach. Declaratory judgment and anticipatory breach are legally distinct

---

[53] *Eastern Metal Recycling – Terminal, LLC*, 2020 WL at 4.
[54] *Spires v. Hanover Fire Insurance Co.*, 70 A.2d 828 (1950).

-14-

terms, despite Roddy's inclusion of both causes of action under the same count. These claims are disposed of in turn.

It is within the trial court's discretion to determine whether a declaratory judgment action would assist the issues between the parties.[55] The purpose of a declaratory judgment action is to afford relief from uncertainty and insecurity with respect to legal rights, status and other relations.[56]

Roddy claims it is entitled to declaratory judgment establishing the liability of defendants for commissions.[57] As discussed at length *supra*, the Commission Agreement on which Roddy bases its alleged entitlement to brokerage fees was invalid *ab intio*. This court cannot issue a declaratory judgment that performance is due under an invalid contract.

Accordingly, Prologis Defendants' Motion for Summary Judgment on Roddy's declaratory judgment claim is granted.

To constitute anticipatory breach under Pennsylvania law there must be an absolute and unequivocal refusal to perform or a distinct and positive statement of an inability to do so.[58] The act must rise to a renunciation amounting to a breach of contract.[59]

As discussed *supra*, there is no agreement that Prologis Defendants could have breached – the Commission Agreement was invalid *ab initio*. Accordingly, Prologis Defendants' Motion for Summary Judgment on Roddy's anticipatory breach claim is granted.

---

[55] 42 P.S. § 7537.
[56] *Keystone Aerial Surveys, Inc. v. Pa. Prop. & Cas. Ins. Guar. Ass'n*, 777 A.2d 84, 88 (Pa. Super 2001).
[57] Third Am. Compl. at 63.
[58] *McClelland v. New Amsterdam Cas. Co.*, 185 A. 198, 200 (1936).
[59] *Id.*

### D. Count IV: Unjust Enrichment

The doctrine of unjust enrichment allows a court to acknowledge the existence of a contract by implication.[60] However, the RELRA strictly requires a written agreement to make a brokerage agreement recoverable.[61] Allowing a party to circumvent the RELRA's requirements by resorting to equitable remedies would defeat the purpose of the statute.[62]

Accordingly, Prologis Defendants' Motion for Summary Judgment on Roddy's unjust enrichment claim is granted.

## II. Prologis Defendants' Motion for Summary Judgment on all crossclaims by Dermody Defendants is granted.

Prologis Defendants' move the court to grant Summary Judgment in their favor on the crossclaims for breach of contract and contribution and indemnification asserted by Dermody Defendants. Dermody alleges that as part of Prologis Defendants' purchase of property, it assumed all contracts, including but not limited to, the April 2001 Commission Agreement entered into by Roddy and Dermody Defendants.[63]

As stated at length in the preceding sections of this Opinion, the Commission Agreement was invalid *ab initio* due to Roddy's failure to include material terms under the RELRA and regulations promulgated by the Pennsylvania Real Estate Commission. As such, the Commission Agreement cannot be the grounds for a meritorious breach of contract claim. Accordingly,

---

[60] *Schenck v. K.E. David, Ltd.*, 666 A.2d 327, 328-329 (Pa. Super. 1995)
[61] *Commercial Realty Group, Inc. v. Market Square Plaza Associates, LP*, 262 A.3d 553 (Pa. Super. 2021)
[62] *Market Square Plaza Associates, LP*, 262 A.3d at 12.
[63] Cross Defs.' Answer to Third Am. Compl. At 87.

-16-

Prologis Defendants' Motion for Summary Judgment on Dermody Defendants' breach of contract crossclaim is granted.

Dermody Defendants crossclaim for contribution and indemnification allegedly flowing from Prologis Defendants' obligation to pay a commission to Roddy Inc. As explained above, the Commission Agreement was invalid *ab intio*. Accordingly, there was no valid agreement to be assigned from Dermody Defendants to Prologis Defendants. As such, there is no grounds for breach of contract or indemnification.

Accordingly, Prologis Defendants' Motion for Summary Judgment on Dermody Defendants' crossclaim for contribution and indemnification is granted.

## CONCLUSION

For the reasons set forth above, Prologis Defendants' two Motions for Summary Judgment dated June 17, 2022 against all claims by Dermody Defendants and Roddy are granted. Accordingly, Roddy's Motion for Summary Judgment dated June 17, 2022 is denied. Prologis Defendants' Motion for Reconsideration dated June 24, 2024 is denied as moot.

DATED: Nov. 12, 2024

BY THE COURT:

NINA W. PADILLA, P.J.

-17-